# UNITED STATES *v.* SANBORN.

*(Circuit Court, D. Massachusetts.  August 14, 1886.)*

1. **WITNESS—COMPENSATION OF WITNESS FROM ANOTHER STATE—AMOUNT TAXABLE FOR TRAVEL—REV. ST. § 848.**

   Under Rev. St. § 848, the travel of an ordinary witness, who, without having been summoned, has traveled from and to the place of his residence, more than 100 miles off, and in another state and district, should be taxed for the whole distance between his residence and the place of trial.

2. **SAME—COMPENSATION OF GOVERNMENT CLERK—REV. ST. § 850.**

   Under Rev. St. § 850, the necessary expenses of a government clerk sent away from his place of business as a witness for the government will be paid, but nothing can be taxed in the bill of costs for his travel or attendance.

Clerk's report of taxation of costs after judgment for the United States in an action at law brought by them for money had and received.

The bill of costs submitted by the attorney for the United States included the following items, duly certified, of sums paid to witnesses: *First.* For a witness who attended court without a subpœna, four days' attendance, at $1.50 a day; and 416 miles travel from and to his residence, at Troy, in the state of New York, at 5 cents a mile,—in all, $26.80. *Second.* For actual and necessary expenses in going, attending court, and returning, of four clerks,—two in the war department and two in the internal revenue office, at Washington, sent from their places of business as witnesses for the government,—in all, $212.20.

The defendant objected that no costs could be taxed against him for witnesses who attended without a subpœna, save for the days when they were present and testified; nor for travel of witnesses beyond 100 miles, and beyond the limits of the district in which the court was held; nor for any traveling or other expenses of witnesses in the employ of the United States.

"In this district," as the clerk stated in his report, "a necessary and material witness has always been allowed, 'for each day's attendance in court, one dollar and fifty cents, and five cents a mile for going from his place of residence to the place of trial or hearing, and five cents a mile for returning,' whether subpœnaed or not, and whatever the distance may have been." The clerk followed this practice so far as to allow four days' attendance and 100 miles travel each way of the first witness, amounting in all to $16; but, in deference to what he supposed to be now the weight of authority, disallowed travel beyond 100 miles, and without the limits of the district. The clerk allowed a like amount for attendance and travel of each of the government clerks who testified as witnesses, and disallowed the amounts charged for their expenses. His reasons for this, as stated in his report, were that, under section 850 of the Revised Statutes, these clerks were entitled to be paid their necessary expenses by the

United States; but that in taxing costs no more favorable rule should be applied in favor of the United States than in favor of other parties to suits; that if an individual, having a person in his employ residing in Washington, should be a party to a suit here, and should desire his attendance as a witness, he could pay him for his services and expenses whatever sum might be agreed upon between them, but in taxing costs, having paid the witness more than his statute fees, and having thereby become subrogated to his right to those fees, could include the amount of those fees only. The attorney for the United States objected to the disallowance of any part of the costs claimed by him, and appealed from the clerk's taxation; and the questions presented by the clerk's report were argued by *Charles Almy, Jr.*, assistant district attorney, for the United States, and were submitted by *Frank L. Washburn*, for the defendant, upon the objections filed by him before the clerk.

Before GRAY, Justice, and COLT, J.

GRAY, Justice. The report of the clerk presents for our determination two questions of costs: the one, of the amount taxable, under section 848 of the Revised Statutes, for the travel of an ordinary witness, who, without having been summoned, has traveled from and to the place of his residence, more than 100 miles off, and in another state and district; the other, of the amount taxable, under section 850, for travel or expenses of government clerks.

Upon the first question the principal authority is *Prouty* v. *Draper*, 2 Story, 199, decided by this court in 1842, which was an action at law for the infringement of a patent, and in which, as the report clearly implies, and the papers on file conclusively show, the witnesses in question, whose travel from their places of residence to the court and back was taxed in the bill of costs, resided in another district, and more that 100 miles from the place of trial, and attended without having been summoned. Mr. Justice STORY, in delivering judgment, after referring to the judiciary act of September 24, 1789, c. 20, § 30, which allowed the testimony of witnesses living more than 100 miles from the place of trial to be taken by deposition, said:

"The act is not peremptory that, under such circumstances, the depositions of the witnesses shall be taken and used, but only that they may be taken and used. It is therefore a mere option given to the party who wishes to use the testimony of the witnesses. In many cases the presence of the witnesses in person, and their oral testimony on the stand, may be indispensable to the true exposition of the merits of the case. No deposition would or could meet all the exigencies which might arise from the varying character of the evidence, or the necessity of instant explanation of circumstances not previously known or understood. The character of the case, too, may be so dependent upon scientific principles, or on a minute description of mechanism, as to be almost impracticable to be presented to a jury except by the aid of oral testimony illustrating the principles of mechanism. In no class of cases is this more forcibly felt than in the trial of cases like the

present, for infringement of patent-rights. There is no pretense in the present case that the witnesses were brought here for the purposes of oppression, or without necessity, for the purpose of swelling the costs of the litigation. In my judgment, therefore, there is no ground to say that the full costs of the personal travel and attendance of the witnesses ought not to be allowed in the costs. Unless my memory deceives me, the same question has been presented to this court in several instances before the present, and it has uniformly received the same determination. There are numerous cases in the English reports in which allowances have been made for the travel and attendance of witnesses who have come from foreign countries for the purposes of the trial; and yet we all know that in such cases, through the instrumentality of a court of equity, (and now in many cases of a court of law,) the testimony of such witnesses might be obtained upon a commission. Indeed, since the statute of 1 Wm. IV. *c.* 22, giving authority to the courts of law to issue commissions to take the examinations of witnesses abroad, it is still a mere matter of discretion with the court, if the witnesses are actually brought from abroad, whether they will allow the expenses of the witnesses or only the costs of a commission. This seems to be putting the whole doctrine upon a sound and rational foundation, and enables the courts at once to accomplish the purposes of justice, and to prevent the accumulation of unnecessary or extravagant expenses."

As early as 1804 the circuit court for the District of Columbia held that the fees of a witness who attended at the request of the attorney for the United States, without having been summoned, were taxable costs. *U. S.* v. *Williams*, 1 Cranch, 178. And, in one of the English cases cited by Mr. Justice STORY, the fact that the witness resided beyond the reach of a subpœna, and therefore could not have been compelled to come, was considered by Lord Chief Justice TINDAL a reason for allowing his traveling expenses in the bill of costs. *Lonergan* v. *Royal Exch. Assur.*, 7 Bing. 725; S. C. 5 Moore & P. 447, 805, 811; 1 Dowl. 223, 233, 235.

The rule affirmed in *Prouty* v. *Draper* was again applied by Mr. Justice STORY, in 1844, in *Whipple* v. *Cumberland Co.*, 3 Story, 84, and was recognized and approved by Mr. Justice WOODBURY, in 1846, in *Hathaway* v. *Roach*, 2 Woodb. & M. 63, 73, and has ever since been acted on in this district. The decisions of Justices STORY and WOODBURY were made under the act of February 28, 1799, *c.* 19, § 6, in which the provision was in this form:

"The compensation to jurors and witnesses in the courts of the United States shall be as follows, to-wit: To each grand and other juror, for each day he shall attend in court, one dollar and twenty-five cents, and for traveling, at the rate of five cents per mile, from their respective places of abode to the place where the court is holden, and the like allowance for returning; to the witnesses summoned in any court of the United States the same allowance as is above provided for jurors." 1 St. 626.

They evidently considered that the general description, at the beginning of the section, of the persons to be compensated as "witnesses in the courts of the United States," was not narrowed by the use of the words "witnesses summoned," towards the end of the section, but included witnesses not summoned, and even those residing

so far from the place of trial that they could not have been summoned or compelled to attend.

The same view applies with increased force to the language of the act of February 26, 1853, c. 80, § 3, (10 St. 167,) repeated in section 848 of the Revised Statutes, by which witness fees are declared to be, "for each day's attendance in court, or before any officer pursuant to law," $1.50, and five cents a mile for going "from his place of residence to the place of trial or hearing," and five cents a mile for returning; and neither the word "summoned," nor any equivalent word, is used, except in a clause added to prevent the multiplication of fees "when a witness is subpœnaed in more than one cause between the same parties at the same court." In the phrase "for each day's attendance in court, or before any officer pursuant to law," the words "pursuant to law" would seem to have been inserted, not to restrict or qualify the effect of "attendance in court," but rather to limit the attendance "before any officer" to attendance before such magistrates, commissioners, and other officers as are authorized by law to take testimony. But, assuming them to apply to both classes of cases, it is only "attendance pursuant to law, not "being summoned pursuant to law," that is required to entitle a witness to his fees. A witness who, in good faith, comes to court to testify in a pending suit, whether he comes in obedience to a subpœna, or at the mere request of one of the parties, attends pursuant to law, and while coming, attending, and returning is privileged from arrest on civil process, even if he comes from abroad, and has no writ of protection. *Walpole* v. *Alexander*, 3 Doug. 45; *May* v. *Shumway*, 16 Gray, 86; *Person* v. *Grier*, 66 N. Y. 124; *Parker* v. *Hotchkiss*, 1 Wall. Jr. 269, 274; *Larned* v. *Griffin*, 12 Fed. Rep. 590.

The only object of a subpœna is to compel the witness to attend. The service of a subpœna is in the interest of the party who desires the attendance, and not in that of the other party. A witness who has not been served with a subpœna cannot, indeed, be attached for not attending; but if he is willing to attend, and does attend, without a subpœna, the service of a subpœna would be superfluous, and would only increase the costs, without any benefit to either party. The examination of the witness in the presence of the tribunal that is to pass upon his testimony is often quite as important to the party against whom he is called as to the party calling him; and the statutes of the United States from the beginning have declared that the mode of proof in the trial of actions at common law shall be by oral testimony, and examination of witnesses in open court, except as otherwise especially provided. Act of September 24, 1789, c. 20, § 30, (1 St. 88; Rev. St. § 861.)

If the witness comes before the court under circumstances, and for a purpose, which warrant the payment and taxation of his fees for attendance and travel, section 848 of the Revised Statutes, like the act of 1853, directs that the travel shall be computed from "his place

of residence." These words, unrestricted in respect of distance or of district, must be considered, as the like general words "their separate places of abode" in the act of 1799 were considered by Mr. Justice STORY and Mr. Justice WOODBURY, to be imperative, and to warrant the taxation of fees for travel from and to the residence of the witness in any part of the United States, whenever his personal attendance in court may reasonably be required in the interests of justice. Neither section 876 of the Revised Statutes, which re-enacts the statute of March 2, 1793, *c.* 22, § 6, (1 St. 335,) and allows subpœnas for witnesses in civil actions to run from one district into another only when the witnesses do not live more than 100 miles from the place where the court is held, nor section 863, which re-enacts provisions of the statutes of September 24, 1789, *c.* 20, § 30, (1 St. 88,) and May 9, 1872, *c.* 146, (17 St. 89,) and permits, without requiring, the testimony of witnesses living at a greater distance to be taken by deposition, has, in our judgment, any bearing upon the question before us. The object of the one is to protect the witness ·against being compelled to go far from home against his will, and the object of the other is to provide a means by which the party may not wholly lose the benefit of his testimony, if he cannot, or will not, attend court. They do not render the voluntary attendance, the reasonable compensation, or the taxation of the fees of any witness unlawful.

The rulings in other circuits, after giving them the consideration due to decisions of courts of co-ordinate jurisdiction, do not present to our minds any sufficient reason for overruling the decisions of our predecessors, disturbing the practice long established here, and departing from what appears to us to be the fair meaning of the statutes. The leading cases in other circuits are *Dreskill* v. *Parish*, 5 McLean, 213, 241, in 1851, and *Anon.*, 5 Blatchf. 134, in 1863, each of which would appear from the report to have been decided summarily, and without being aware of the previous decisions in England and in this circuit. In *Dreskill* v. *Parish*, Mr. Justice McLEAN ruled that the fees of a witness who attended voluntarily, without having been summoned, could not be taxed. But the only reasons assigned by the learned justice were that the attendance of such a witness could not have been compelled by attachment, and that the act of 1799 (under which the case arose) had provided only for the compensation of witnesses summoned, and "a witness not summoned, of course, can receive no compensation." Under the act of 1853 there have been conflicting decisions of district judges in the same circuit; Judge LEAVITT, in 1862, holding that the fees for travel of such a witness could not be taxed, and Judge WITHEY, in 1869, holding that they could. *Woodruff* v. *Barney*, 2 Fisher, Pat. Cas. 244; S. C. 1 Bond, 528; *Anderson* v. *Moe*, 1 Abb. (U. S.) 299. The disallowance of such fees by Judges DRUMMOND and BLODGETT, in 1870, in *Sawyer* v. *Aultman & Taylor Co.*, 5 Biss. 165, was governed by a

standing rule of court prohibiting the clerk from taxing the costs of any witnesses except those regularly summoned. The opinion of Judge SAWYER, in 1871, in *Spaulding* v. *Tucker*, 2 Sawy. 50, disallowing costs for the travel of witnesses coming more than 100 miles, and from another district, was based upon *Dreskill* v. *Parish* and *Woodruff* v. *Barney*, and upon the theory (in which, for the reasons already stated, we cannot concur) that a witness who has not been served with a subpœna does not attend pursuant to law.

The whole report of the anonymous case in 5 Blatchf. 134, is only this brief memorandum:

"In this case, which was a question as to the taxation of costs, SHIPMAN, J., with the concurrence of Mr. Justice NELSON, held that traveling fees to a witness were allowable only to the extent a subpœna would run; that is, for any distance within the district, but for not exceeding one hundred miles from the place of trial, unless the distance was wholly within the district."

That ruling appears to have been followed without further discussion, as having fixed the practice in the Second circuit, so far as not to permit the taxation of fees for travel beyond the limits within which the witness could have been summoned. *Beckwith* v. *Easton*, (1870,) 4 Ben. 357; *The Leo*, (1872,) 5 Ben. 486. But we are unable to reconcile it in principle with the uniform course of decision in that circuit, that the fact that a witness had not been summoned did not prevent the taxation of his fees for travel and attendance, under the act of 1853. *Cummings* v. *Akron Co.*, (1869,) 6 Blatchf. 509; *Dennis* v. *Eddy*, (1874,) 12 Blatchf. 195. There seems to us to be quite as much reason for taxing the travel of a witness from the place of his residence to the place of trial in the case in which he could not have been summoned as in the case in which he might have been and was not. The cases in the courts of the several states depend too much upon local statute or usage to be of much assistance in the interpretation of the acts of congress.

There being no evidence or suggestion that the personal attendance of the witness who resided at Troy, in the state of New York, was unnecessary or unreasonable, his travel should be taxed for the whole distance between his residence and the place of trial.

The other question presented by the report is quite distinct, and is governed by section 850 of the Revised Statutes, which is as follows:

"When any clerk or other officer of the United States is sent away from his place of business as a witness for the government, his necessary expenses, stated in items and sworn to, in going, returning, and attendance on the court, shall be audited and paid; but no mileage or other compensation in addition to his salary shall in any case be allowed."

The meaning of this provision, which is a substantial re-enactment of the similar one in the act of February 26, 1853, *c.* 80, § 3, (10 St. 167, 168,) appears to us too clear to admit of doubt. Private persons are allowed witness fees because of the interruption of their own business. But a clerk or other officer of the United States re-

ceives from the government a salary as a full compensation for the performance of all services and duties which he may lawfully be required to perform for the government, whether at the usual place or elsewhere. If he is sent away for any public object, the government pays his necessary expenses. If he is sent away as a witness, those expenses are to be "audited and paid," that is to say, by the proper executive department or officer. "Audited" is not used to designate the taxation of costs by a court. And the statute peremptorily forbids the allowance to him of any mileage or other compensation in addition to his salary. In short, the United States, when they send one of their clerks to testify as a witness for the government, do not, on the one hand, oblige him to pay out of his own pocket the expense to which he is thereby put, nor, on the other hand, permit him to receive, or compel the adverse party to pay him, any fees for the benefit either of the witness or of the United States.

It follows that nothing can be taxed in the bill of costs for the travel or attendance of the government clerks. Taxation modified.