## THE GLADIATOR.

(District Court, D. Massachusetts. March 24, 1898.)

Nos. 319, 877.

1. ADMIRALTY ⬅119—APPEAL—REVERSAL—INTEREST.
   Where the Circuit Court of Appeals, on reversal of a decree in admiralty in favor of one vessel, directed the court below "to proceed on the theory that both vessels were in fault," rule 30 of the Circuit Court of Appeals rules (150 Fed. xxxv, 79 C. C. A. xxxv), relating to interest, does not deprive the District Court of discretion in the allowance of interest.
   [Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 776–790; Dec. Dig. ⬅119.]

2. ADMIRALTY ⬅122—COSTS—DIVIDED DAMAGES.
   In an admiralty suit, where the damages are divided, it is the general rule, binding in all cases, unless the circumstances are exceptional, that the costs will also be divided.
   [Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 797–827; Dec. Dig. ⬅122.]

3. TOWAGE ⬅11—LOSS OF TOW—DEMURRAGE.
   A tug, which was herself partly in fault for the loss of her tow, is not entitled to demurrage for the time lost in attempting to save the tow.
   [Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. ⬅11.]

In Admiralty. Suit by Joshua F. Nickerson against the steam tug Gladiator. Decree for half damages for loss of tow.

Carver & Blodgett, of Boston, Mass., for libelant.

Carpenter & Mosher and Edward S. Dodge, of Boston, Mass., for claimant.

LOWELL, District Judge. This was a libel against the steam tug Gladiator for the loss of the schooner Nowell. The accident was alleged to have been caused by the negligence of the Gladiator in towing her.

The District Court found that the tug alone was in fault, and decreed to the libelant the value of the schooner, with interest from the date of filing the libel.

The claimants appealed to the Circuit Court of Appeals, which by its mandate has directed the District Court "to proceed on the theory that both vessels were in fault."

[1] Claimant's counsel contends that by rule 30 of the Circuit Court of Appeals (150 Fed. xxxv, 79 C. C. A. xxxv), as interpreted in The Haxby, 83 Fed. 720, 28 C. C. A. 38, the District Court is prevented from allowing the libelant interest upon the value of the schooner. Both the rule and the case cited appear to me to refer only to cases in which the amount of the damage has been fixed in the mandate. In this case the District Court is directed by the mandate to proceed on the theory that both vessels were in fault, but in other respects the decree seems to be left to its discretion. Of course the District Court is not in any way controlled by its former decree, which was made on the theory that the tug alone was in fault.

On the whole, I think that interest should be allowed, and I therefore award to the libelant half the value of the schooner as previously ascertained by this court, with interest on the same from the date of filing the libel. See Fabre v. Cunard Steamship Co., 53 Fed. 288, 293, 3 C. C. A. 534; Nashua & Lowell R. R. v. Boston & Lowell R. R., 61 Fed. 237, 9 C. C. A. 468.

[2] The libelant's counsel contends that his client should be awarded the costs of the District Court. While this matter seems to me to be left to my discretion by the mandate, yet I think that The Horace B. Parker, 76 Fed. 238, 22 C. C. A. 418, is intended to establish a general rule, binding in all cases where the damages are divided, unless the circumstances are distinctly exceptional. The costs of the District Court are therefore to be divided.

[3] The claimant's answer set out no counterclaim for damage suffered by the Gladiator in the accident. By an amended answer, filed after the case had come back to this court, he seeks to recover the value of a hawser and about a day's demurrage, said to have been caused by a deviation of the Gladiator in order to land the crew of the Nowell at Hyannis. The libelant's counsel assented to the filing of the amendment, and it may therefore be treated as forming part of the original answer. No objection was made to the allowance for the hawser, and half its value is allowed in set-off. As to the demurrage caused by the deviation, it is admitted that the accident occurred at about half past 6. The Gladiator then cast off two barges, which it was towing, and went to the assistance of the schooner. Until about half past 10, when the schooner sank, the tug was engaged in trying

to save her. One or both of the barges were then dragging, and so the Gladiator took one of, them in tow, and proceeded some miles on its course to New York, until the barge could be left in safety near the Handkerchief Lightship. As the captain of the tug testified that he was not able to get up the anchor of the other barge until daylight, that barge could not have been taken in tow until after the tug had returned from the Handkerchief. At daylight he made the tug fast to the second barge and towed it up near the first barge. Having anchored, it there, he proceeded with the tug to Hyannis, landed the crew of the schooner, returned at once to the barges, and went on his way. He states the time taken in returning from Hyannis to the barges at three-quarters of an hour, so that his deviation to Hyannis could not have delayed him beyond two or three hours at the utmost. This delay is so small that I think I ought not to allow demurrage on account of it. Much the greater part of the delay was caused by the accident itself, and by casting off the barges, which was made necessary by the efforts of the Gladiator to save the schooner. No precedent has been shown to me for allowing to a vessel, herself at fault for an accident, any demurrage for the time lost by her in consequence of her attempt to save the injured vessel. To allow it would, I think, be an injurious practice. I therefore disallow the claim for demurrage.

The claim for the travel and attendance of Cahoon is disallowed, and I allow taxation of the travel of the claimant's witnesses who came from Philadelphia to attend the trial. Decree accordingly.