## THE TEASER.

## THE HARRISBURG.

### FREDERICKSEN v. McDONALD et al.

(Circuit Court of Appeals, First Circuit.   April 8, 1915.)

### Nos. 1077, 1078.

1. **COLLISION ⟨⟩58—STEAM AND SAILING VESSELS—TUG WITH TOW.**
   When a steam vessel and a sailing vessel are approaching on such courses as to involve risk of collision, under the statutory rule the duty is upon the steam vessel to keep out of the way of the other, and when she has a tow the duty to navigate with extreme care to keep her tow out of the course of the sailing vessel, while it is the duty of the latter to hold her course and speed except in situations of imminent peril or extreme danger.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 68–71; Dec. Dig. ⟨⟩58.

   Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

2. **COLLISION ⟨⟩62—SCHOONER AND TOW MEETING—IMPROPER NAVIGATION OF TUG.**
   A collision at night in Vineyard Sound between a barge in tow and a schooner on nearly meeting courses *held* due to the fault of the tug, which had a tow, 2,600 feet long in not changing her course so as to allow the schooner more room and in not signaling her tows of the approach of the schooner. The barge, also, *held* in fault for not keeping a lookout and not following the course of the tug. The schooner, which kept her course until immediately before the collision, *held* not in fault.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. § 80; Dec. Dig. ⟨⟩62.]

3. **COLLISION ⟨⟩154—SUIT FOR DAMAGES—COSTS—ALLOWANCE OF WITNESS FEES TO LIBELANTS.**
   The allowance of witness fees to the master and crew of a vessel who were libelants in a suit for collision in which the vessel was sunk, and who were interested to the extent only of the value of their personal effects lost, approved.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. § 308; Dec. Dig. ⟨⟩154.]

Appeals from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Suit for collision by John L. McDonald and others against the steam-tug Teaser, Harry W. Law, claimant; and the barge Harrisburg, George Fredericksen, claimant. Decree for libelants, and claimants appeal. Affirmed.

See, also, 217 Fed. 920.

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Eugene P. Carver and G. Philip Wardner, both of Boston, Mass., for The Teaser.

Edward E. Blodgett, of Boston, Mass. (Blodgett, Jones, Burnham & Bingham, of Boston, Mass., on the brief), for Fredericksen.

Edward S. Dodge, of Boston, Mass., and Benjamin Thompson, of Portland, Me. (J. L. Ralston, of Halifax, N. S., on the brief), for appellees.

Before PUTNAM and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. The collision in question was in Vineyard Sound, and was between a sailing vessel and a barge in tow.

The barge Harrisburg, together with another, was being towed westerly by the steamtug Teaser, and bound for Philadelphia. The sailing vessel was the schooner Demozelle, heavily loaded with coal, and was on a voyage from a New Jersey port to New Brunswick.

The collision was in the nighttime. The tow of the steamtug was something like 2,600 feet in length, and when the steamtug and the schooner discovered each other they were from a mile to a mile and a half apart, and were on courses nearly parallel; their courses differing hardly more than one point. The wind was bearing down somewhat from the north, yet the sea was comparatively smooth, and it is not perceived that the wind cut any figure in the means that brought about the disaster, unless it was when in extremis the schooner, putting herself upon an abrupt starboard tack, brought herself into the wind in order, if possible, to avoid contact with the barge Harrisburg. There was plenty of sea room on the steamtug's port, and there were no vessels to interfere with a maneuver of the tug and barges in that direction.

[1] It was urged in argument that, when a steam vessel and a sailing vessel are approaching on such courses as to involve risk of collision, under an imperative statutory rule, the duty is upon the steam vessel to keep out of the way of the sailing vessel, and that this duty imposes not only the obligation to so navigate as to keep herself out of the way of the approaching sailing vessel, but, when she has a tow, the obligation of navigating with extreme care and with a high degree of diligence, to the end that she shall keep her fleet of barges out of the course on which the sailing vessel is approaching.

We think the statutes and the authorities establish these two propositions, as well as the other proposition that the sailing vessel, under such circumstances of approach, shall hold her course and keep her speed, except in situations of imminent peril or extreme danger.

[2] The District Court charged the responsibility of the collision upon the steamtug and upon the barge Harrisburg, which was the head barge of her tow.

Speaking generally, the principal fault attributed to the tug by the District Court was that of not changing her course and that of her barges to port, thus giving a greater margin of safety to the approaching schooner; and, speaking generally, the faults attributed to the barge Harrisburg were that of not maintaining a proper lookout, and of

not holding herself in the wake of the course on which the steamtug was advancing.

The contending interests have been heard in this court in oral argument upon elaborate briefs, and the questions involved have been discussed with ability, and we infer, from what has been said here, that all of the questions were fully and carefully presented to the District Court.

An examination of the opinion of the court below demonstrates that that court considered very carefully, not only all the general questions involved, but most carefully analyzed and weighed with an experienced mind all conditions which bore circumstantially upon the substantive questions of fault, such as the courses of approach; the length of tow; the positions, conditions, and bearings of the lights upon the various vessels; the positions of lookouts and watchmen, their vigilance and worthiness; the conditions of the wind; conflicts in the testimony of witnesses who gave evidence in respect to the details of the disaster; their credibility, and the reasonableness of their stories; the possibility of the sheering of the barge under a loose hawser; the luffing of the schooner as she was brought into the wind for the purpose of clearing the barge; and much more.

We see no reason for going very much into detailed discussion of the subsidiary conflicts in the testimony, because we think the questions of fault, especially so far as they relate to the steamtug and the schooner, are plainly and reasonably determinable upon aspects of the situation which are not in controversy in any substantial way.

In the general view, we have a steam vessel proceeding in open sea, upon a westward course, with a long line of lightly-laden barges in tow, with plenty of sea room on her port and to the southward, who sights the green light of a sailing vessel a mile or two away, approaching upon nearly the same course upon which she is advancing.

In such circumstances of narrow margin it would seem that the steamer was bound to know, and ought to have acted promptly upon the idea, that her barges, which were in a considerable measure helpless as they were being hauled through the water, might, from various well-known causes, sheer a little from the course on which she was proceeding, and toward the course on which the sailing vessel was approaching, and thereby bring the sailing vessel into jeopardy.

Yet, in view of such a plain and manifest duty, she neither changed her course, nor signaled her barges of the approach of the schooner, until the schooner was abreast her beam and heading across the towline and likely to come into collision with the head barge.

We think it of little consequence, so far as the fault of the tug is concerned, whether the sheering of the head barge precipitated danger at that particular point in the line, because the disaster, in all probability, would have been averted if the tug had performed her obvious duty of seasonably changing her course and of warning the barges of the approach of the schooner, with a signal to starboard their helms. It is clear that the fundamental fault should rest upon the steamtug for not seasonably doing just what she did do when too late to avoid a collision. Not only should the steamer have immediately and unmis-

takably signaled the barges of the approach of the sailing vessel, but she should have taken the further precaution of changing her course, not so much for the purpose of keeping herself out of the way, because there was no probable danger of collision between the tug and schooner, but for the purpose of keeping her tow, for which she was in a very high degree responsible, away from the course upon which the steamer was approaching.

We think if the tug had responded promptly and reasonably to the plain duty which was upon her, as she sighted the approach of the sailing vessel, that the collision would have been avoided. Consequently, the District Court is sustained in its conclusions in respect to the fault of the tug.

Now, as to the sailing vessel, the schooner Demozelle, which in collision with the barge Harrisburg was a total loss:

We see no ground for sustaining the contention that the sailing vessel was at fault. Having sighted the tug, she kept rightfully on her course until she discovered the red light of the barge, when she attempted justifiable means for avoiding collision. It is quite true that the sailing vessel, when passing the tug, was aware of the fact that there were barges in tow; but we see no reason for charging her with fault, because we think, under law and fact, that she rightfully proceeded on her course until she discovered the red light of the barge, when she instantly attempted to avert disaster.

We agree with the reasoning of the District Court to the effect that it is more reasonable to suppose that the collision resulted because the barge had for some reason come to be far enough to the northward of the tug's course to get into the schooner's way than to suppose the barge to be following the tug's course and the schooner to have tacked between tug and barge, or that the schooner had been driven upon the tug's course through losing control of herself by bringing herself too close into the wind.

And we also think that the reasoning based upon the fact that the rear barge was under sail, and that the Harrisburg was not, and upon the probability of a loose hawser between her and the Harrisburg, adds considerably to the contention that the Harrisburg, not being under attention, could have swung or sheered away from the course of the tug and onto the course of the sailing vessel. But after all it is difficult to find just what occurred at the moment of the disaster.

Considerations in respect to conflicts in testimony under such circumstances are subsidiary and in a large sense immaterial, and perhaps it is not necessary in this case to attempt a solution of the tangle at the instant of collision, because the fundamental and controlling fault of the tug rests upon her for not seasonably making efficient efforts to take herself and her tow away from the course of the sailing vessel, and the fault was rested upon the barge for not being in a position to right herself and aid in such a maneuver. It would seem that many of the subissues raised by the evidence and the arguments in this case in respect to precisely what happened in emergency, might reasonably be deemed issues of minor importance, because the undisputed relative positions of the vessels, when the schooner was sighted by the

tug, required strict observance of general rules of navigation, and as the disastrous results, in the circumstances of this case, may, upon a general view, be fairly attributed to the nonobservance of rules which were enacted into positive law under considerations of public policy and of public safety, it would seem that the situation might reasonably be relieved from over-refinement in respect to minor details. At all events, we think the lightly-loaded barge was off her course, and that the collision cannot reasonably be attributed to any fault on the part of the sailing vessel.

Upon the question whether the barge should be held in fault, or whether the entire loss should be rested upon the steamtug which had her in tow, we are not so clear.

While those in charge of barges are held to rules of ordinary skill and watchfulness in management, it is understood that the higher measure of watchfulness and care rests upon the steam power which holds the barges in tow. The evidence is strong that those who were in charge of the barge Harrisburg were slack; that they did not see the schooner's lights until she was right upon them, when they could have seen them if they were properly attentive; that they did not know of her approach until her dark shadow was upon them, but it is not improbable that if the tug had done its duty by signaling the approach of the schooner, and by changing her own course, the barge would have brought herself under control in aid of the tug's change of course, and that the vessels would have passed in safety. But, after all, the question of the barge's responsibility in respect to the collision, under the peculiar circumstances of this case, is more of a question for the District Court than for a court of review. If the steam vessel had drawn herself, and had drawn her tow, a little away from the course of the approaching sailing vessel, a course to which the sailing vessel, under the circumstances, was bound to hold, she would simply have been obeying the mandate of the United States Statutes, and of the sailing rules of the sea, and in all probability would have been directly instrumental in creating a condition which would have enabled the vessels to pass in safety, and that such result would have come independently of the question whether the barge was or was not at fault in not being in her wake.

As has been already observed, the testimony pointed strongly in the direction of showing gross inattention on the part of those in charge of the Harrisburg. But the District Judge saw the witnesses who were called to vindicate the barge and relieve her from responsibility, and is therefore in a better position to determine the question of her fault than we are. While we have some hesitation on the question of the barge's responsibility because of the higher responsibility and the greater fault of the tug, still, in view of the rule which gives a large measure of weight to findings by courts of first instance, who see the witnesses, we do not feel justified in reversing the finding, and of saying that the barge was guilty of no fault which contributed to the collision.

Our conclusion is that all the questions involved in this case, including the question of costs, should rest where the learned District Judge left them.

[3] In respect to the witnesses, the master and crew of the Demo-zelle, to whom fees were allowed as witnesses rather than as parties, it perhaps ought to be said that they were not parties in the larger and more substantial sense in which the witnesses were parties in the cases upon which those objecting to the taxation rely; as, for instance, in the case in Nichols v. Brunswick, 3 Cliff. 88, Fed. Cas. No. 10,239, the party claiming fees as a witness was the principal, if not the sole party in interest, and in The Philadelphia (D. C.) 163 Fed. 438, the party claiming fees as a witness was a part owner of the vessel. And it is understood that in The Elizabeth and Helen, Fed. Cas. No. 4354, the witness was substantially interested in the main controversy. As to the decision of Judge Lowell in the Gladiator,[1] it appears that the claimant's witnesses, who came from Philadelphia to attend the trial, were allowed travel and attendance, while the claim for the travel and attendance of a witness Cahoon, who testified for the libelant, was disallowed. The ground of disallowance is neither discussed nor stated. We do not find upon an examination of the case that he was a party of record. The disallowance apparently could not have been upon the distinct ground that he was a party; but, whatever the ground may have been, there were no reasons given for it. Therefore we do not regard it as having any substantial weight upon the question involved here.

In the clerk's findings, he states that the main testimony of the witnesses in question related to facts concerning the collision, which of course was the substantial, if not the sole controversy, while they also testified concerning the value of their personal effects, about which there was no real dispute, that being their only interest involved.

Without pursuing the question further, and while the position of the objecting party is perhaps technically correct, we are not inclined to hold that witnesses in a situation like this were parties in such a substantial sense as to exclude them from the ordinary witness fees for travel and attendance, when allowance is made in the discretion of the District Court.

It is ordered that the decrees below be affirmed, with costs of this court.