**PERLMAN et al. v. FELDMANN et al.**
**Civ. A. No. 3086.**

United States District Court
D. Connecticut.

Sept. 24, 1953.

New Haven, Conn., for defendant Newport Steel Corp.

Cummings & Lockwood, by Raymond E. Hackett, William H. Timbers and Morgan P. Ames, Stamford, Conn., Sullivan & Cromwell, by Arthur H. Dean, Howard T. Milman and Karl Harr, New York City, for defendant C. Russell Feldmann and others.

HINCKS, Chief Judge.

This is a stockholders' action which was decided in favor of the defendants: the complaint was dismissed. The parties filed their respective bills of costs and their objections to the bills filed by their adversaries. The conflicting contentions were fully argued before the Clerk who has made a meticulous taxation, explained and supported by a careful memorandum. The bill as taxed by the Clerk and his accompanying memorandum may be deemed a part hereof. Thereafter all parties moved for review and the matter was fully heard by the court on oral argument and briefs.

## I.

### The Feldmann Defendants' Costs
### Reporter's Transcript of Trial Minutes

The most important controversy raised by the motions for review grows out of the taxability of the cost to the defendants of the reporter's fees (a) for the provision of daily copy of transcripts of the trial minutes, (b) of pre-trial depositions, and (c) of pre-trial hearings on preliminary motions.

As to the taxability of the trial minutes, the individual defendants, whose interests were in principle identical and who were all represented both by a firm of Connecticut lawyers and a firm of New York lawyers, claimed as taxable the cost of two copies of the trial minutes which at their request were provided to them on a daily basis by the reporter who of course simultaneously provided the Court with the ribbon copy as delivered. An additional copy was similarly furnished to Newport and to

Pomerantz, Levy, Schreiber & Haudek, by A. L. Pomerantz, and William E. Haudek, New York City, for plaintiffs.

Saltman, Weiss & Connors, by Arthur B. Weiss, Bridgeport, Conn., for plaintiff Perlman.

Proskauer, Rose, Goetz & Mendelsohn, by P. W. Haberman, Jr., and J. Alvin Van Bergh, New York City, for plaintiff Kramer and others.

Gumbart, Corbin, Typer & Cooper, by Morris Tyler and Richard H. Bowerman,

the plaintiffs. The parties, of course, stood the initial cost of the copies obtained by them. The Clerk taxed the cost of one copy only to these defendants (who will be referred to as the "Feldmann defendants" in contradistinction from Newport which as the corporate beneficiary in the action was also a defendant). They contend that he should have taxed the cost of the two copies which they obtained and paid for. The plaintiffs claim that the court is without power to tax the item at all.

This was a complicated case comprising the consolidation of several stockholders' actions. The plaintiffs sought a recovery of $4,000,000 from several defendants. The trial consumed seven days distributed over several weeks. The transcript ran to over 1,200 typed pages.

That the cost of at least one copy of this transcript was necessarily obtained is sufficiently demonstrated by the following facts. It was downright indispensable to me in the long hours spent after trial in the formulation of my findings and opinion,—a task which necessarily had to be deferred until the final briefs were in and other immediate pressures permitted. By that time my memory of the testimony, at best inadequate to retain the mass of information adduced, had naturally faded. It is also noted that the availability of the transcript at that stage greatly facilitated the task both for counsel and the judge. For it made it possible for counsel to key the argument of facts on their briefs to specific pages of the transcript. It thus enabled counsel to present their cases more effectively and greatly assisted me in evaluating the many claims of fact which were asserted.

It might perhaps be argued that this later usefulness of the transcript to the judge did not make it necessary for counsel to obtain a transcript because under the statute, 28 U.S.C.A. § 753, the court had the power to require the reporter to provide him with a copy without charge. This is indeed a provision that, when no transcript has been made at the request and initial expense of counsel, the judge invokes when need arises for some short extract or in some exceptional situation. But it has never been the practice of this court in cases in which no party is paying for a transcript to require the reporter to furnish one for his exclusive use. In such cases, I have always felt that it was the judge's lot to get along as best he could on the strength of his own trial notes, perhaps asking the reporter to read occasional extracts from his shorthand notes to verify or correct the judge's memory and notes. To require a complete transcript in all such cases would impose on the reporter such an intolerable burden as to cause his prompt resignation, leaving the court without means suitably to fill his place. For the basic salaries for reporters, as fixed by the Judicial Conference within the limits of Congressional appropriations, are inadequate to support full-time employment unless augmented by fees from the sale of transcripts. The salaries, rather, are implicitly predicated, I think, upon the assumption that except in exceptional situations the reporters will not generally be required to furnish long transcripts in cases in which he makes no "sales" to a party. That this policy or reasonable concern for the reporter's earnings has official approval is suggested by the Report of the Judicial Conference of the United States covering its September, 1951 meeting, at page 17. And so, my finding that the transcript here was necessarily obtained for use in the case is additionally supported by the fact that, because it was obtained at the initial expense of a party, it was available to me in the post-trial stage of the case.

That transcript *on a daily basis* was necessarily obtained for use on the trial itself is a conclusion required from the following facts considered against the background of the nature of the case and the courtroom scene. The transcript was frequently used by all counsel in conducting their examinations and in shaping the presentation of their case. I can also attest that it was of great

assistance to me during the course of the trial: it helped me to assimilate the testimony as it was received, to shape my rulings on evidence and occasionally to formulate questions of my own to witnesses. Without an available transcript, in a case such as this interminable interruptions and delays result while counsel ask the reporter to search back through his notes to refresh the memory of counsel or the judge as to some item of testimony lurking in the limbo of the prior record for an item important for the formulation of a claim, or an objection, or a ruling. And knowledge that the transcript would later be available to me enabled me to concentrate on the evidence as it was adduced free from the distracting and laborious task of making copious notes. In this connection, it should be observed that the provision of the statute, 28 U.S.C.A. § 753, whereby the judge may require the reporter to supply him with a transcript does not authorize the judge to require copy on a daily basis. For to provide daily copy a reporter must employ assistants at his own expense. And plainly the salaries available to the reporter were not fixed to compensate for such a heavy item of overhead expense.

The plaintiffs, in opposition to the conclusions just indicated, rely principally upon Stallo v. Wagner, 245 F. 636, 639, an equity case in which the Circuit Court of Appeals for the Second Circuit handed down its decision in 1917, at a time when the only statutory authority for the allowance of costs was found in the old Fee Bill of 1853, Rev.Stat. § 983, 28 U.S.C. (Ed.1940) § 830. The questions there before the court were posed by Judge Rogers as follows: "Are the copies of the stenographer's minutes to be regarded as included in the clause (of the old Fee Bill) 'copies of papers necessarily obtained for use on trial'? And does equity rule 50 mean anything more than that the fees paid for the copy of the minutes of the stenographer furnished to the court shall be taxed, and not the fees paid for the copy furnished to either of the parties?" To both of these questions the court answered No.

The answer to the first question and the reasoning and authorities upon which the answer was made to rest may not properly be viewed as authority for the proposition that the item now in question is not included in paragraph (2) of Section 1920 of the new Code. For paragraph (2) of Section 1920 the Revisers, with Congressional approval, doubtless intended to make broad enough to incorporate the substance of subdivision (e) of the Court Reporters Act of 1944, 58 Stat. 5, 28 U.S.C. (Ed.1940 Supp.) § 9a. By the first sentence of subdivision (e) of that Act allowance was authorized of: "In the discretion of the court any part or all of the fees for transcripts may be taxed as costs in the case." This provision, I hold, was carried over into the Code of 1948, 28 U.S.C.A. § 1920(2), which reads: "1920. Taxation of costs. A judge or clerk of any court of the United States may tax as costs the following: * * * (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case * * *."

I think it altogether clear that the statutory extract from subdivision (e) of the Court Reporters Act quoted above was an express expansion of the statutory scope of taxable costs theretofore controlling upon which the Stallo case was predicated. The broadening effect of the Court Reporter Act should be recognized, not ignored, now that occasion has arisen to construe its successor provision, Sec. 1920(2). After all, the Stallo case rested chiefly upon the old case of The William Branfoot, 4 Cir., 52 F. 390, which held only that under the old Fee Bill in the light of the practice then existing there had been no sufficient showing that on the particular facts of that case the transcript had necessarily been obtained for use *on trial,* that being the narrower test of taxability in the old Fee Bill.

The second question posed by the court in the Stallo case shows by its very language that it was formulated in the light of a procedural situation envisaged by old Equity Rule 50 which was superseded by Fed.Rules Civ.Proc. Rule 80(a), 28 U.S.C.A. Neither of these rules envisaged the provision of the Court Reporters Act whereby the reporter must furnish a copy of the transcript to the Court without charge. And although the notes of the Advisory Committee state that Rule 80(a) "follows substantially former Equity Rule 50" it may be noted that Rule 80(a) was given a wider scope than that indicated by the Stallo opinion in Harris v. Twentieth Century-Fox, 139 F.2d 571. However that may be, Rule 80(a) was abrogated in 1946 because of the intervention of the Court Reporters Act, as the Notes of the Advisory Committee also show. And if the plaintiffs are right in their contentions that a trial transcript obtained by a party is not taxable, Paragraph (2) was a completely unnecessary addition to Section 1920 of the new Code; Paragraph (4) of the Code would have had that effect.

■ This latter observation is not invalidated by plaintiff's suggestion that the addition of Paragraph (2) was made to permit of taxing a cost of transcript if obtained for purposes of an appeal. This argument, however, is in essential conflict with the recommendation of the Judicial Conference at its September 1951 session, referred to above. Moreover, if such had been the Revisers' thought, the provision would have been placed in Sec. 1913 of the Code dealing with the costs in the Court of Appeals. Instead, it was inserted at a place in the Code dealing peculiarly with incidents of practice before the trial court, and in Section 1920 which is applicable to district courts. Yet, neither the District Court nor its clerk by statute or practice has power to tax costs on appeal. Thus it is clear that Section 1920 (2) does not apply to costs on appeal and, in view of Section 1920(4), would be wholly nugatory unless applicable in a proper case to the taxation by the district court of the cost of transcript.

■ It is perhaps arguable that Sec. 1920(2), in that it limited the taxability of the cost of transcript to that "necessarily obtained for use in the case" even though broader than the old Fee Bill was intended somewhat to narrow the grant of discretion carried in subdivision (e) of the Court Reporters Act which made no mention of the test of necessity. I incline to think that it did no more than to fix the same boundary for the proper exercise of discretion that was implicit in subdivision (e); even under subdivision (e) as it stood before the enactment of the new code, I can hardly conceive of a case in which a judge would wisely exercise his discretion by taxing the cost of a transcript not obtained for use in the case. However, there is no need to labor the question as to the relative breadth of subdivision (e) and the present code provision. For here, even if the version in the code was in that respect somewhat narrower, I find that at least a single copy of the daily trial transcript was reasonably necessary for use on the trial.

Although I agree that there has been considerable divergence of opinion as to the subject-matter, I think the rulings indicated above are supported by, and in line with, the weight of contemporaneous authority.

In Neely v. Merchants Trust Co. of Red Bank, N. J., D.C., 2 F.R.D. 199, the cost was taxed by the District Court of New Jersey in 1941, when Rule 80(a) was in effect before the enactment of the Court Reporters Act. In Donato v. Parker Pen Co., D.C., 7 F.R.D. 148, the cost of trial transcript at daily copy rates was taxed in the district court for the Southern District of New York. To the same effect is Brookside Theatre Corp. v. Twentieth Century-Fox Film Corp., D.C., 11 F.R.D. 259 (modified on another ground in 8 Cir., 194 F.2d 846, certiorari denied 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348; Consolidated Fisheries Co. v. Fairbanks, Morse & Co., D.C., 106 F. Supp. 714; and Stein v. Rosenthal, D.C.

S.D.Cal.1952, 103 F.Supp. 227. And the ruling was implicit in a number of cases taxing the cost of transcript of pre-trial depositions hereinafter cited. Decisions subsequent to 1944 which contain rulings to contrary effect, as for instance Marshall v. Southern Pacific Co., D.C., 14 F.R.D. 228, wholly fail to take into account the broadened content of the Court Reporters Act and of Section 1920 of the new Code.

It may also be worth noting that the ruling indicated above is not one first advanced by this court for purposes of this case. It is in accord with previous rulings of this court. See Weiss v. Smith, D.C.Conn.1952, 103 F.Supp. 736; Dysart v. Remington Rand, D.C., 15 F.R.D. 60. Pursuant to these decisions it has been the invariable practice of the Clerk in recent years to tax as costs fees for trial transcript, if he found the transcript "necessarily obtained."

■ I sustain, however, the Clerk's action in disallowing the cost of more than one copy of transcript to the individual defendants. True, there were a plurality of such defendants but in no respect were their positions adverse. And it is true that these defendants were represented by two separate law firms. Nevertheless, I think the cost of additional copies of transcript to those defendants must be classified as incurred for convenience, rather than necessity for use on trial. Kenyon v. Automatic Instrument Co., D.C., 10 F.R.D. 248. See also Consolidated Fisheries Co. v. Fairbanks, Morse & Co., D.C., 106 F.Supp. 714.

■ I sustain also the action of the Clerk in taxing one copy of the transcript at the *average* cost to these defendants for the three copies which they obtained. It is true that the reporter in conformity with Rule 14 of this court has a higher rate for the first copy of a transcript transcribed at the request of counsel than for additional copies so furnished and if but one copy had been obtained the cost would have been taxable at the higher rate. But I agree with plaintiff that the item should be taxed at the actual cost to the defendants —not at the rate which would have been applicable in a situation which does not here exist.

### Transcript of Depositions

■ The Clerk also allowed the costs to these defendants of one copy of the transcript of each of five pre-trial depositions aggregating $311.43. Of these depositions, all were taken at the instance of the plaintiffs except one. Having in mind the objectives of the pre-trial discovery provision of the Federal Rules and the use of pretrial deposition authorized by Rule 26(a) I find that these transcripts—both that of the deposition taken at defendants' instance and those taken by the plaintiffs, were necessarily obtained for use in the case and hold that the allowance was properly made.

■■ To be sure, deposition transcripts, unlike trial transcripts, were not brought within the range of taxable costs by the Court Reporters Act. Indeed, the Judicial Conference has in effect ruled that the taking and transcription of depositions is not a mandatory duty of official Court Reporters, compensation for which is included in their basic salaries. However, I think the cost to a prevailing party of a copy of a deposition transcript is implicit in 28 U.S.C.A. § 1920(2). It is altogether plausible to believe—though I confess I cannot document the point—that when the Revisers came to define the boundary of judicial discretion in the taxing of costs they substituted for "necessarily obtained for use *on trial*", which was the test under the Old Fee Bill, the phrase "necessarily obtained for use *in the case*" in order to include items of expense incurred in the course of the pretrial disclosure proceedings established by the Federal Rules and to include the cost of transcript obtained after trial for the use by counsel and the trial judge in the post-trial stage of the case.

I allowed such items in Hancock v. Albee, D.C., 11 F.R.D. 139; Hartig v. Schnoecknecht, D.C., 11 F.R.D. 166;

Biever v. Chrysler Corp., D.C.Conn., 108 F.Supp. 948. Such items in recent times have frequently been taxed by the Clerk of this Court without resulting reviews. Such an item was taxed in Hope Basket Co. v. Product Advancement Corp., D.C., 104 F.Supp. 444. And in a number of cases by higher courts the cost of *taking* depositions has been allowed as an item of costs. Of these Harris v. Twentieth Century-Fox Film Corp., 2 Cir., 139 F. 2d 571, and W. F. & John Barnes Co. v. International Harvester Co., 7 Cir., 145 F.2d 915, are typical. In none of these cases is it plain whether the Court was concerned with the cost of transcripts as distinguished from the cost of "taking". But if, as these cases hold, the fees of the stenographer for taking a deposition were taxable, the authority for such rulings must be found in Rule 80(a) or its successor provision in Section 1920(2). And if that Section, which covers "fees * * * for all or any part of the stenographic transcript", covers fees for *taking* depositions its language surely is broad enough to cover fees for deposition transcripts as well.

 From this, however, it does not follow that the cost of all deposition transcripts obtained by parties are taxable as a matter of right. The normal deposition procedure established by Rule 30 requires the deposition to be transcribed, signed by the witness, certified by the officer before whom it was taken, and filed with the Court. It is implicit in the Rules that the party who notices a deposition shall initially stand the expense involved in this procedure. With the transcript on file all parties have a right to read it in the Clerk's office. In such a case, a purchase of a copy from the stenographer by any party is obviously for his private convenience and cannot be taxed as an expense "necessarily obtained." However, it is my view that the cost of the original copy on file with the Clerk under Section 1920(2) of the Code may be taxed in favor of the party who noticed the deposition if he shall have prevailed on the merits and if it was necessarily obtained in the sense that the taking of the deposition and its general content was reasonably necessary for the development of the case in the light of the situation then existing. But, of course, if the party taking a deposition which is filed in the usual course fails ultimately to prevail on the merits, surely he is not entitled to be reimbursed for that expense.

 A different situation exists when the filing of a deposition is waived and as a result no copy is available in the Clerk's office for the use of the parties. In such a case, I hold, the prevailing party whether he noticed the deposition or not is entitled to have the cost of one copy purchased by him taxed in his favor. The holding is subject to the qualifications noted above that the party noticing the deposition is not entitled to have the cost of his copy taxed if the taking and content of the deposition was not reasonably necessary as above defined, and that the adverse party is not entitled to have the cost taxed of so much of the transcript as covers cross-examination unreasonably prolonged or irrelevant.

 When a deposition is taken within the proper bounds of discovery as delineated by the Federal Rules, at least one transcript thereof, either that on file in the Clerk's office or if none is filed that obtained by a party, will normally be found to be necessarily obtained for use in the case, whether or not the deposition is actually offered or used in the trial. To say otherwise would be to assert that the discovery provisions of the rules were adopted merely for the convenience of the parties,—which would be ridiculous. But that does not mean that every deposition in its entirety was "necessarily" obtained. If the parties abuse their rights on discovery by taking depositions unnecessarily or unreasonably prolonging them, surely to that extent the transcript is not necessarily obtained and not taxable.

 Doubtless the burden is on the prevailing party to demonstrate that a deposition transcript the cost of which

includes in his bill of costs was necessarily obtained. But surely the party who noticed a deposition cannot be heard to say that it was unreasonably taken; as to him there is an inference that its taking was within the Rule invoked. And generally as to a deposition taken by a party through his attorney at law, the inference that a member of the Bar will not abuse his professional privileges will be sufficient to support a finding that the transcript thereof was reasonably obtained in the absence of affirmative showing to the contrary. It follows, I think, that the cost of one copy of the transcript—either that on file or, if none is filed, that purchased by the prevailing party—may be taxed unless an adverse party shall interpose a specific objection and it thereupon appears that the deposition was improperly taken or unduly prolonged.

I believe it to be within the intendment of Rule 54(d) that such an objection if pressed should be made to the Clerk in the first instance; an objection cannot be said to *reviewable* by the court unless first presented to the Clerk. If more than the one day's notice provided by that rule is needed to assemble the showing on which the objection will be pressed, the Clerk, I am sure, will be liberal in allowing the time reasonably necessary. However, if the Clerk should feel unable to appraise the merit of such an objection, I should not criticize him for allowing the item in reliance upon the inference of regularity noted above, thus leaving it to the court to consider the detail upon which the merit of the objection depends.

Here none of the depositions in question was filed or docketed. I must assume therefore that the filing was waived. I therefore confirm the allowance to these defendants of the cost of all as made by the Clerk.

The plaintiffs have raised one highly technical objection, contending that the deposition transcripts are not taxable under Section 1920(2) of the Code (which allows "fees of the court reporter") because the *official* court reporter was neither the officer before whom the depositions were taken nor the stenographer who made the transcriptions. As to this, I rule that the authority before whom the depositions were noticed was a "court reporter" within the intendment of the statutory section. The depositions were noticed under the authority of the court, Harris v. Twentieth Century-Fox, supra, and there is no claim that an objection was noted to the authority named. He therefore became the court reporter pro hac vice by the implied appointment of the Court. It is true that the Court Reporters Act, 28 U.S.C.A. 753(a), provides that for each district the number of reporters entitled to salary payable out of public funds shall be determined by the Judicial Conference and that additional reporters may be appointed only with the approval of the Director of the Administrative Office of the United States Courts. But these limitations on the appointive power were obviously intended to protect the budget of the Administrative Office for court reporters and to safeguard the disbursement of public funds. The failure to satisfy these requirements does not invalidate an implied appointment such as was made here which involved no draft on the official budget and no expenditure of public funds. A contrary ruling would indeed produce bizarre results. Surely if the cost of transcript provided by the official reporter is taxable, it would be capricious to disallow the cost of one covering a deposition reported by another at a place (perhaps far distant) and at a time when the official reporter was not available. Especially is this so in view of the fact that an official court reporter is not required to take depositions. In any event, if I am right that Section 1920(2) of the Code was not intended to narrow the scope of Rule 80(a), the contention is inconsistent with the holding in Harris v. Twentieth Century Fox, supra.

To the extent that the objection to this item is based upon a complaint that to interpret "court reporter" in

Section 1920(2) as including an officer who is not the official court reporter will expose the parties to higher transcript costs than those approved by the Judicial Conference, it is without substance. Even the official court reporter may charge at a rate higher than the Conference rate for taking and transcribing depositions if the higher rate is sanctioned by the law of the State where the deposition is taken. Rule 14 (b) of this Court (Ed.1950) expressly so provides. The Comptroller General in a carefully considered opinion given to the Attorney General by letter dated October 7, 1948, B. 76606, recognized the right of an official court reporter to collect from the United States the cost of deposition transcript at a higher local rate than the Conference rate. I feel sure that that right is generally recognized. This ground of objection is overruled.

■ The plaintiff's objection to the taxability of the cost of the additional copies obtained by these defendants is sustained. Even the fact that the defendants were represented by two law firms, one in New York and the other in Connecticut, I rule not to be a sufficient showing that the additional copies were obtained "necessarily" as distinguished from convenience.

### Transcripts of Pretrial Hearing on Motions

■ The Clerk, over plaintiff's objection, taxed the costs of transcripts of three preliminary hearings obtained by these defendants. None of these hearings involved the taking of evidence; the transcripts, which were furnished by the official court reporter, include only argument of counsel and colloquy with the court. Ordinarily the reporter is not even present at our Motion Calendar and is not required to report hearings on civil motions not involving the taking of testimony unless particularly requested so to do. No showing has been made of any necessity for these transcripts. It appears to me that the ensuing memorandum of decision or order of the court served every need. If subsequent to the entry of an order a need had developed, it would have been time enough then to order the transcript. But no such need was shown beyond a reference to one transcript when it came to tax costs. And that reference in my judgment was wholly ineffectual. To tax such items would be to encourage a needless addition to the cost of litigation which as applied to subsequent cases well might reach disproportionate dimensions. These items, which are designated on the bill as taxed by the Clerk as Items 1(a) and (b), are disallowed.

### Miscellaneous Objections by Plaintiffs to Feldmann's Bill of Costs

■ Item 2 on the Feldmann defendants' bill covered the expense of reproduction of a compilation of the operative pleadings which I requested as necessary because of the complicated and confused state of the pleadings. The expense appears to me reasonable in view of the number of copies required for circulation to counsel by the order of consolidation and it will serve no useful purpose to expand the Clerk's comment in support of the allowance.

■ I hold, however, that the Clerk should have disallowed Item 3 as taxed. This comprised the cost of making copies of unidentified documents. An objection thereto was timely pressed by the plaintiffs. Thereupon it was incumbent upon these defendants to substantiate their claim of taxability by showing at least what the documents were and the use made of them. Without such a showing it was impossible to determine whether they had been "necessarily" obtained. It is true that throughout these proceedings and especially at trial these defendants, and Newport too, were exceedingly cooperative in providing opposing counsel with copies of documents which they offered and of documents which plaintiffs desired to examine and offer. I vividly recall that the defendants seemed to have an inexhaustible reservoir of copies of relevant documents.

available generally at a moment's notice. Against this background, the plaintiff's position of opposition to this allowance seems, I confess, somewhat querulous. However, plausibility is not a substitute for proof and the showing made I must hold inadequate to support allowance.

This concludes my comment on items raised by plaintiff's motion. The plaintiff's motion to review the costs taxed to the so-called Feldmann defendants is denied except that as to items 1(a) and (b) and item 3 the motion is granted and those are disallowed.

#### Miscellaneous Objections by the Feldmann Defendants

Item 2 on the bill as taxed should be increased by $32. If, as I have held on plaintiff's motion to review, this item was taxable, the allowance should include the expense of the copy furnished the court and at least the ten copies which the consent order of consolidation of May 28, 1951 required for service on counsel. It was not unreasonable in view of the situation then existing for the defendants to obtain one extra copy for use if needed.

■■■ Item 4 on the bill presented for taxation included as a single item a docket fee of $2.50 for each of eleven deposition parts of which were received in evidence. The amount claimed, $27.-50, was inadvertently omitted by the Clerk. It was taxable under 28 U.S.C.A. § 1923 and should be added to the defendants' bill. The plaintiffs point to the fact that some of these depositions were taken on written interrogatories. But there is nothing in Section 1923 which justifies a construction that it is applicable only to depositions orally taken.

The other objections by these defendants to the bill as taxed by the Clerk were dealt with above in my discussion of the taxability of transcript costs.

#### II.

#### Costs of Defendant Newport

The plaintiffs claim that all costs to Newport incurred as incidental to its active participation in the defense should

be dissolved. Newport is the corporate beneficiary which failed and refused to bring the action in its own name. Since it thus declined to assume the role of a plaintiff the plaintiff brought the action allegedly in its behalf naming Newport as a defendant. Concededly, it was a necessary party. But plaintiffs claim that its position as a defendant was nominal only in that it stood to gain by the litigation without hazard of loss. On that account their contention is that it is not entitled to such costs as were incurred because of its active and voluntary participation in the defense.

■■ This contention is overruled. The bringing of the action required Newport, acting of course through its board of directors, to decide whether actively to participate in the defense or not. This required an honest determination of whether the corporate interest required its participation. It may well have decided that the plaintiffs' claim was unfounded and that no recovery was reasonably to be expected for its benefit. Indeed, its prior failure and refusal to sue imports that such was its judgment. That left for decision the question whether the prosecution of the action, even though it should eventually prove unsuccessful, might be harmful to the corporation, if the prosecution were left to proceed without constant and active representation in behalf of the corporation. That Newport answered this question in the affirmative, is to be inferred from the fact that it did participate.

I do not understand the plaintiffs to dispute that these questions were within the scope of managerial authority vested in a board of directors: the gist of their contention is, rather, that the power was not wisely or honestly exercised. However, the plaintiffs at no time, at trial or before, sought to challenge Newport's right to defend. On the contrary, in their pre-trial discovery proceedings plaintiffs on several occasions took advantage of Newport's presence *as an adversary party*. But this aside, if a challenge to the right were now directly before me for decision, and had been timely presented, I would rule that there is

no showing in the record of the case of fraud or other exceptional factors which would justify a court in countermanding the decisions made by the corporate management. See Fletcher on Corporations, Vol. 5, Sec. 2104. I note that by Par. 11 of the complaint it was charged that the new board of directors, which made the decision to participate in the defense, caused the "corporation to embark on a policy" which "will deprive it of substantial profits and *customer good will.*" I cannot accept plaintiff's contention that this was only an attack on the present directors in their individual capacities. The allegation was one relating to a corporate policy which the directors might think harmful to the corporation if allowed to stand without refutation or explanation. I note also that the plaintiffs' position throughout was such that they sought to disparage the value of the corporate assets. This effort if unopposed might reasonably have been considered harmful to the cororate credit. And, I think it fair to say, in all its pretrial phases the issues of the case were in such a highly fluid state, notwithstanding my efforts to limit and define them, that the directors might have thought corporate participation in the trial was necessary to resist or explain unforeseen efforts by the plaintiffs to establish facts having an impact harmful to proper corporate interests.

Of course, I cannot know just what motives or what particular considerations led the corporation to make its decision. In this connection it may be worth noting that by the suit no recovery was sought of the directors who made the decision. In view of my own considered decision on the merits I cannot criticize the Board for its conclusion that the action would not result in a recovery for the corporate benefit. And on the whole, even if timely challenge had been made to the corporate right to participate, I could not properly have denied that right. For, even if the need for corporate participation does not affirmatively appear, nothing has been shown which would warrant me in substituting my judgment for that of the Board as to the existence of that need.

If, as I thus hold, Newport had a right to participate, it must follow that on entry of a decree for the defendants, Newport is entitled to taxable costs incurred incidental to the exercise of that right. I turn, therefore, to rule on the plaintiffs' specific objections.

I sustain the objections to items 1(b) and 1(c) as taxed. As indicated in connection with my ruling on Feldmann's costs, transcripts of preliminary hearings can seldom be classified as necessarily obtained. There is no showing here to take these transcripts out of that rule. Item 1(c) was the cost of a transcript on an application to a judge to limit the scope of a deposition. Perhaps, if it had been shown that the transcript had been necessary for the further conduct of the deposition, my ruling might have been otherwise. But there was no such showing; plaintiff's affidavit shows that the deposition was concluded on the same day from which I assume that the transcript was not even received until a later date.

The objections to Items 2(b), (c), (d), (e), (g), (h), (i) and (j) are also sustained. These items are for numerous photostats, and since when the items were challenged Newport was unable to identify the documents, I must rule that it has failed to show that they were "necessarily obtained."

All objections by the plaintiffs to the other items as taxed are overruled. I think for the reasons stated in my discussion of the Feldmann costs, Newport is entitled to the cost of one copy of the trial transcript and of all depositions. Newport was separately represented by counsel and the corporate interests which it might properly seek to protect were by no means the same as the interests of the Feldmann defendants.

Among the objections overruled, those to Items 6(a) and (b), raise interesting questions relating to the taxability of witness' fees for two officers of Newport each of whom travelled 800 miles, each way, to testify. Plaintiffs object to

the resulting mileage claimed contending that the witnesses by reason of their corporate status classified as parties for whose attendance witness fees are not taxable. The transcript shows that the witnesses were called by "the defendants". It might plausibly be argued, however, that they were called only by the *Feldmann defendants* for they were examined both on direct and redirect only by Feldmann's counsel. It is not necessary, however, to determine whether they should be classified as witnesses for Feldmann. For even if it be deemed that they were called by Newport, I agree with the Clerk that their proper fees are taxable. No recovery was sought from them individually; their interest was not shown to be other than the natural concern of an officer for the welfare of this corporation. The Clerk's ruling was amply supported by the cases which he cited, viz., The Petroleum No. 5, D.C., 41 F.2d 268; Tuck v. Olds, C.C., 29 F. 883; Fredericksen v. McDonald, 1 Cir., 223 F. 13. Though these were admiralty cases the principle involved is equally applicable to the situation here.

The Clerk was also right in limiting the allowance for travel to 100 miles each way, that being the territorial limitation on the reach of a subpoena. The Wahkeena, D.C., 51 F.2d 106; Vincennes Steel Corp. v. Miller, 5 Cir., 94 F.2d 347; Friedman v. Washburn Co., 7 Cir., 155 F.2d 959; and Kenyon v. Automatic Instrument Co., D.C., 10 F.R.D. 248.

It is accordingly ordered that the Clerk recast the costs in accordance with the rulings indicated in this memorandum.