## THE VERNON.

*(District Court, E. D. Michigan. July 19, 1888.)*

1. ADMIRALTY — SALE OF VESSEL — LIMITED LIABILITY ACT — DISTRIBUTION — CLERK'S COMMISSIONS.
   Where a vessel is sold by a trustee under the limited liability act, and the proceeds of sale are paid into court, the clerk's commission is payable from such proceeds, even though the owner appears and contests the liability of the vessel for her losses.

2. SAME—COSTS—STIPULATION—LIABILITY OF CLAIMANT.
   A claimant who desires to contest the liability of the vessel, and gives a stipulation for costs, under Gen. Adm. Rule 26, is liable only for the costs properly incident to such contest.

3. SAME—MARSHAL'S COMMISSION.
   Where a vessel is sold by a trustee under the limited liability act, the marshal is not entitled to a commission.

4. SAME—WITNESS—NON-RESIDENT—MILEAGE.
   Where a witness attends from out of the district, mileage can only be taxed to the extent of 100 miles.

5. SAME—DOUBLE MILEAGE.
   Where two libels are filed against the same vessel for two losses occasioned by the same disaster, but the two causes were never consolidated, *held*, that double mileage and attendance should be allowed, though the witnesses were sworn but once, and their testimony was read in both cases.

6. SAME—COSTS—COLLISION—PREPARATIONS OF MAPS.
   The charges of a person employed to make soundings, and prepare a map of the locality of a collision, cannot be taxed as disbursements.

In Admiralty. On appeal from taxation of costs.

The Vernon was arrested upon two libels for negligence in towing the schooners Senator and Watson upon the rocks at the mouth of Detour

river. Damages were claimed in the aggregate sum of $35,000. The Vernon was released upon the usual stipulation to answer judgment, and subsequently her owners, the petitioners in this case, instituted proceedings for a limitation of their liability. Under the statute, section 4285, they elected to transfer the Vernon to Henry A. Harmon, as trustee, and thereafter the said trustee proceeded to take possession and sell the vessel. She brought $23,150. The proceeds of the sale, less the trustee's costs and expenses, were paid into court, and petitioners thereupon proceeded to take issue with and to contest the claim of liability for the loss of the schooners; but a decree was finally rendered in favor of the owners of the Senator in the amount of $12,000 and costs, for the damages suffered by the Senator and her cargo. To the owner of the Watson the court decreed $22,156 and costs.

*H. C. Wisner*, for petitioners.

*H. H. Swan* and *F. H. Canfield*, for libelants.

BROWN, J. Petitioners appeal from the clerk's taxation of the following items:

1. *The clerk's commission upon the proceeds of sale.* By Rev. St. § 828, the clerk is entitled to a commission of 1 per cent. "for receiving, keeping, and paying out money in pursuance of any statute or order of court." As the proceeds of sale to the amount of $23,150 were paid into the registry of the court by the trustee, no objection is made to the taxation of the commission. The only question is by whom it should be paid. Ordinarily, where money is collected upon an execution, it is the duty of the marshal to add the clerk's poundage as well as his own to the amount of the judgment, and collect it of the defendant, as the plaintiff is entitled to the whole amount of his judgment. *Fagan* v. *Cullen*, 28 Fed. Rep. 843; *In re Goodrich*, 4 Dill. 230; *Upton* v. *Triblecock*, Id. 232; *Kitchen* v. *Woodfin*, 1 Hughes, (U. S.) 340, 342; *Blake* v *Hawkins*, 19 Fed. Rep. 204. Such is undoubtedly the rule in admiralty, where an ordinary stipulation is given to answer the decree of the court, and execution is issued against the claimants and their stipulators. By the limited liability act, (Rev. St. § 4285,) a new right is given to the owner of the ship, viz., the right to transfer her to a trustee, "from and after which transfer all claims and proceedings against the owner shall cease." This transfer being effected, proof of all claims, (Gen. Adm. rule 55,) shall be made before a commissioner, and upon completion of the proofs the commissioner shall make report, and upon the confirmation of such report, the proceeds of the ship or vessel and freight, "after payment of costs and expenses," shall be divided *pro rata* among the several claimants. This, no doubt, contemplates the payment of all costs and expenses necessarily incident to the sale of the vessel and the proof of the claims, including the clerk's commission upon the money paid into court. If, however, the owner chooses to contest the liability of the ship for the losses, as he may do under rule 56, he is bound under rule 26 to give the usual stipulation for the costs incident to that contest, including the fees of the clerk, marshal, proctors, witnesses, etc.; but not, I think, including the clerk's

commission, which is payable whether he contests or not. Costs are within the discretion of a court of admiralty, and I think equity demands that where a party contests a claim for damages he ought to be mulcted only in the interest upon the fund, and in such costs as necessarily arise from that contest. Costs which, but for such contest, would be paid from the fund, ought, I think, to remain chargeable against the fund. If the petitioner had been successful in contesting his liability for the loss, he would undoubtedly be bound to pay this commission himself, when he withdrew the proceeds of the sale from the court, since it attaches to the fund itself, and not to the litigation out of which the fund arises.

2. *The marshal's commission upon the fund in court.* By section 829 the marshal is entitled to a commission in admiralty cases in two contingencies: *First,* where the debt or claim is settled by the parties without a sale of the property, he is entitled to a commission of 1 per cent. on the first $500, and one-half of 1 per cent. on the excess. This contemplates a settlement of the case between the parties before trial, in which case the marshal is entitled to his commission upon the amount paid in settlement; but as the cases under consideration were never settled, but were contested through to a final decree, it is evident that the marshal is not entitled to a commission under this clause. *Second,* or the sale of vessels or other property under process in admiralty, or under the order of the court of admiralty, and for receiving and paying over the money, he is entitled to a larger commission. But as the vessel was never sold by him, it is clear that he is not entitled to a commission under this subdivision. That it would be inequitable to allow him this commission is apparent from the fact that the trustee who makes the sale, either receives a commission or compensation in the nature of a commission upon such sale. Indeed, I understand this item to be practically abandoned upon the argument.

3. *Mileage of witnesses from out of the district.* Libelants claim the right to charge the full mileage of witnesses from out of the district, though there is no doubt their depositions might have been taken. Petitioners, upon the other hand, claim that, under the construction given to this statute by this court, they are entitled to charge only for the distance of 100 miles. Probably there is no question connected with costs in the federal courts upon which there is a greater conflict of authority. In the First circuit it has been uniformly held from 1842 to the present day that the successful party was entitled to the mileage of his witnesses, regardless of the distance, or of the fact that they came from out of the district. The rule was first announced by Mr. Justice STORY in *Prouty* v. *Draper,* 2 Story, 199, was reiterated by the same judge in *Whipple* v. *Manufacturing Co.,* 3 Story, 84; was recognized and approved by Mr. Justice WOODBURY in *Hathaway* v. *Roach,* 2 Woodb. & M. 63, 73, and was finally again exhaustively considered and reaffirmed by Mr. Justice GRAY, in *U. S.* v. *Sanborn,* 28 Fed. Rep. 299. It was admitted, however, by Mr. Justice STORY that under the state practice in Massachusetts the travel of the witness could only be taxed from the line of the state. *Melvin* v.

*Whiting*, 13 Pick. 184; *White* v. *Judd*, 1 Metc. 293. In the Second circuit the rule is as well established the other way. In an anonymous case reported in 5 Blatchf. 134, Mr. Justice NELSON and Judge SHIPMAN held that the traveling fees to a witness were allowable to the extent the subpœna would run, that is, for any distance within the district, but for not exceeding 100 miles from the place of trial, unless the distance was wholly within the district. This ruling was affirmed by Judge BENEDICT in *Beckwith* v. *Easton*, 4 Ben. 357, and in *The Leo*, 5 Ben. 486, and by Judge COXE in *Insurance Co.* v. *Steam-Ship Co.*, 29 Fed. Rep. 237. The rule has been settled in the same way in the Ninth circuit by Judge SAWYER, in *Spaulding* v. *Tucker*, 2 Sawy. 50, and in *Haines* v. *McLaughlin*, 29 Fed. Rep. 70. I do not regard the cases of *Parker* v. *Bigler*, 1 Fish. Pat. Cas. 285; *Woodruff* v. *Barney*, 2 Fish. Pat. Cas. 244, or *Dreskill* v. *Parish*, 5 McLean, 241, as of any particular value in this discussion, as the last two of them, at least, put their decision upon the ground that a witness can in no case be entitled to his fees unless he is summoned by a regular subpœna issued from a court. The necessity of a subpœna was carefully considered by Judge WITHEY in *Anderson* v. *Moe*, 1 Abb. (U. S.) 299, and by Mr. Justice GRAY in *U. S.* v. *Sanborn*, 28 Fed. Rep. 299, and both of them came to the conclusion that a witness who, in good faith, comes to court to testify in a pending suit, whether he comes in obedience to a subpœna or at the mere request of one of the parties, attends "pursuant to law," and is entitled to his fees. I have no doubt, myself, of the correctness of these rulings, and have always followed them in this district. There is no settled rule in this circuit upon the subject of mileage, although in the case of *Anderson* v. *Moe*, 1 Abb. (U. S.) 299, Judge WITHEY held the fees of witnesses to be taxable, though they came from New York, and more than 100 miles from the place of trial. In determining this question, I think that considerable weight should be given to sections 863 and 876, the former of which permits the deposition of a witness to be taken when he lives at a greater distance from the place of trial than 100 miles; and the latter of which allows subpœnas to be served in other districts, with a proviso that in civil causes witnesses living out of the district in which the court is held do not live at a greater distance than 100 miles from the place of holding the same. Construing these two sections together, the inference seems to me very strong that it was the intention of congress to limit the allowance of mileage to the distance of 100 miles, where the witness lives in another district. There is, no doubt, very considerable force in the argument of Mr. Justice STORY, that the act is not peremptory in requiring the depositions of witnesses to be taken, but only that they *may* be taken and used. "It is," says he, in *Prouty* v. *Draper*, 2 Story, 200, "a mere option given to the party who wishes to use the testimony of the witnesses. In many cases the presence of the witnesses in person, and their oral testimony on the stand, may be indispensable to the true exposition of the merits of the case. No deposition would or could meet all the exigencies which might arise from the varying character of the evidence, or the necessity of instant explanation of circumstances, not previously known or under-

stood." And his ruling appears to have been invariable to allow the mileage of witnesses when they were not brought for the purpose of oppression, or without necessity, for the purpose of swelling the costs of litigation. His opinion appears also to be supported by the English authorities at that day. Notwithstanding this argument, however, it seems to me to be putting in the hands of a litigant a very great power to permit him to summon witnesses from distant states to attend sessions of the court here, although their testimony may be very material and important. If he be able to procure the attendance of a witness from New York, and charge full mileage, I see no reason why he might not procure the attendance of an important witness from California, or even from Australia, or other remote quarter of the globe, and practically ruin the opposite party by the accumulation of costs. It is true, there is reserved to the court the power of declaring that the testimony of such witnesses is not so material as to require their attendance from out of the district; yet, if the testimony of a witness were shown to be important, it would be very difficult to say from what distance he might or might not be summoned. My own practice has been, in such cases, to limit the mileage to 100 miles, presuming that the testimony of witnesses who live at a greater distance could and should be taken by deposition. I would not say that, if a case were presented by affidavit showing the materiality of a witness who lived out of the district, and at a greater distance than 100 miles, that his deposition could not be satisfactorily taken, and that his presence were actually necessary at the trial, that I would not allow mileage for his attendance; but I regard this as a special case, and calling, perhaps, for an exception to the general rule. For the present I shall adhere to the practice that has heretofore prevailed, and decline to allow for more than 100 miles.

4. *Double mileage and attendance for the same witnesses.* The witnesses of both the libelants were the same upon the hearing. It is claimed that they are entitled to mileage and attendance in each case. Their right of recovery was dependent upon the same state of facts, yet the cases were distinct. By section 848, when a witness is subpœnaed in more than one cause between the same parties at the same court, only one travel fee and one per diem compensation shall be allowed for attendance; but in this case there were two distinct and separate causes, and the inference certainly is that they are entitled to mileage and attendance in both cases. This was the view taken by Mr. Justice BLATCHFORD in *Wooster* v. *Handy,* 23 Fed. Rep. 49, 64, by Mr. Justice GRIER in *Parker* v. *Bigler*, 1 Fish. Pat. Cas. 285, and by Judge HAMMOND in *Archer* v. *Insurance Co.*, 31 Fed. Rep. 660. I regard it as quite immaterial that the cases were tried together by consent, that the witnesses were sworn but once, that their testimony was but once written out, and used but once in the two cases. In the absence of an order consolidating the two causes, I think it clear that the witnesses are entitled to their mileage and attendance in both cases.

5. *Map and survey of the locality of the collision.* An expert was employed at an expense of $70 to make soundings and prepare a map of that part

of the Detour river in which the collision occurred, with the land-marks upon the shore. I think it is clear this cannot be taxed as costs. *Tuck v. Olds*, 29 Fed. Rep. 883.