## FRIEDMAN v. WASHBURN CO.
### No. 8965.

Circuit Court of Appeals, Seventh Circuit.
June 12, 1946.

Maxwell E. Sparrow, of New York City, and Harold R. Nettles, of Freeport, Ill., for appellant.

Andrew F. Wintercorn, of Rockford, Ill., and Irvin H. Fathchild, of Chicago, Ill., for appellee.

Before SPARKS, KERNER and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

This cause is presented to us for a second time, this appeal being from a judgment on the merits of the cause, dismissing the complaint, and directing the fullest allowance of costs permissible.

This court had earlier reversed a judgment of the District Court dismissing appellant's complaint on defendant's motion

for judgment on the pleadings. 7 Cir., 145 F.2d 715. The theory on which the dismissed complaint was based was that appellant was entitled to have appellee declared a trustee ex maleficio of a patent alleged to have been wrongly applied for and issued to an employee of appellee on an invention in fact conceived by appellant and confidentially disclosed to another employee of appellee, and to have that patent assigned to himself, with an accounting for profits. We held that the complaint did not state a cause of action under the patent laws since if the facts were true as alleged by appellant, the patent was void, under the ruling in Kennedy v. Hazelton, 128 U.S. 667, 9 S. Ct. 202, 32 L.Ed. 576. However, we further held that, while the bill of complaint was inartistically drafted, it did set up sufficient allegations to state a cause of action for misappropriation of an invention confidentially disclosed to appellee, and that if those allegations could be supported by sufficient evidence, appellant might be entitled to some relief for such misappropriation, having in mind the further teaching of the Kennedy case, supra, and other cases cited, that even though a bill to compel assignment of a void patent and for an accounting for profits would not lie, a plaintiff might be entitled to maintain an action to recover damages.

The device involved in this lawsuit, which appellant asserted was invented by himself and which was the subject of patent No. 2,241,229, subsequently applied for by an employee of appellee, Chester Williams, and, on his assignment, issued to appellee, was a strainer having a one-piece frame made of a thermoplastic material to which was permanently attached a wire mesh bowl. Appellant contends that on February 5, 1938, he made complete disclosure of this strainer to appellee, and also of the method of permanently attaching the bowl to the frame by compression under heat. Appellee contends that the disclosures all related to a strainer then being developed by appellant consisting of a one-piece frame for use with a number of removable metal bowls of different size meshes. Appellant had already made application for patent on this device on January 11, 1938, shortly before the interview, and patent No. 2,174,577 was issued thereon, October 3, 1939.

Appellant testified that he had called upon an officer of appellee, one Tomajan, on February 5, 1938, "to interest the Washburn Company to enter with me taking over the strainers, either on a royalty basis or outright purchase,. or to make the strainers for me." He stated that he took with him several samples of strainers, one a metal one and one plastic, and that before he showed anything to Tomajan he asked him to keep it all confidential because the patent had not yet issued, to which Tomajan agreed. He also showed him, and left with him, the drawings of the metal strainer and a copy of the patent application for the removable bowl strainer and a sample of the plastic handle to be used in connection therewith. He asserted, and his testimony was corroborated by that of a cousin who had worked with him in the development of his strainers, that before he called upon Tomajan he had experimented with thermoplastic frames, inserting metal bowls therein and permanently attaching them by means of compression under heat. She stated that he had made up several samples to take along with him for the interview.

Appellant's principal witness, Tomajan, testified that all he and appellant had talked about was the removable bowl strainer which the latter was developing and wanted assistance for in producing and marketing. He denied that anything had been said about the plastic-frame strainer with the permanently attached metal bowl. His testimony was corroborated by that of another employee, one Hood, who had his office in the same room with Tomajan and who, both testified, was present during the interview with appellant, although the latter stated that Tomajan was alone when he talked to him.

On February 10, 1938, Tomajan wrote appellant a letter upon which the latter strongly relies.[1] He argues that the state-

---

[1] Dear Mr. Friedman:
    In line with my promise, I am writing you today to tell you our feeling about the matters which we discussed when you were here last Saturday.
    We have gone into this question quite

ment that "the plastic frame strainer is one that we feel would present difficulties" effectively discouraged him from going on with it and that he was thereby precluded from developing his own invention while appellee secretly took up the concept and reduced it to successful practice. Appellee, on the contrary, contends that the letter itself indicates that the "plastic frame strainer" referred to was the removable-bowl one involved in the patent application, and that this interpretation is corroborated by the evidence of the cousin who received the package and identified the strainers therein contained as "one one-piece metal and one thermoplastic with removable cup."

We think a fair reading of all the evidence, both oral and documentary, supports appellee's contentions as to the interview and as to the letter. Apart from the conflict in the evidence which the trial court resolved adversely to appellant, we think other facts disclosed by the record sustain the decision. It appears to us significant that although appellant and his witness both testified that they made up several samples of the plastic frame with the bowl permanently attached, none of these samples survived for appellant to use as exhibits in his cause, although he introduced numerous exhibits in support of his contentions. An examination of two of these exhibits relied upon as examples of appellant's conception of a rigid frame with, in one case a mirror, and in the other, a strainer bowl, permanently attached thereto, discloses that both were made some time after the interview, bearing legends embossed in the handle that indicate that they were made up after appellant's removable bowl strainer went into production, a time fixed by other evidence as after August 10, 1938. In fact, it appears to us, that the only *plastic* exhibits that may have been in existence at the time of the interview are the frame for use with the removable bowl, and one intro-

---

carefully, and it is our feeling that we do not see anything that we can suggest on it. Our feeling is that as far as an arrangement with you personally is concerned, we do not at the present time see a basis under which we can work together. If you have any ideas along those lines, we shall be glad to hear from you.

Coming to the items themselves, the plastic frame strainer is one that we feel would present difficulties, not only from the standpoint of manufacture, but also from the standpoint of distribution, that would offset any advantage there would be in that type of item.

This leaves the one with the tinned frame; in other words, the combination of tin with wire cloth. That, it seems to us, is something that would have special value only in the premium field but not as a regular standard piece of merchandise. Consequently, it is not a thing that we feel we would care to take on as a part of our line.

Coming next to the question of making these for you, we believe that the best way of handling it would be for your source of supply on the lithographed tin parts to figure what the cost would be for making those out of lithographed tin and then let us figure on the cost for assembling that to the wire cloth. Before we can do that so as to give you a price on the finished product, we would have to know something about the quantities on which you would like to have figures pre-

pared, as well as the cost of the lithographed metal parts.

If you want us to look into that question, we shall be very glad to study it after we have heard from you as to the cost of the metal parts, as well as the quantities on which you would suggest our figuring. As far as the details of construction are concerned, that is something that can be worked out later if we get farther along, but at the outset it would seem that the important thing would be to figure out what would be the cost, roughly, of such an item made by combining the lithographed tin stock with the wire cloth to make a bowl strainer.

We appreciate very much your having wanted to discuss this matter with us and also the fact that you have allowed us to take several days in arriving at our conclusion, but, as I told you over the telephone yesterday, it was not until this morning that I was able to discuss this matter with my associates here and I am hastening to give you our decision just as promptly as possible because I realize that you do not want to be kept waiting on this.

I am returning to you the two strainers which you left with me, as well as the drawings and letters and patent application papers sent to you by Mr. Frederick F. Schuetz.

Very truly yours,
The Washburn Company,
John Tomajan,
Vice President.

duced by appellee, a plastic handle strainer attached to a metal ring carrying the bowl. Tomajan stated that appellee had been using plastic handles since 1929.

We also consider it quite significant that while appellant now asserts that he was experimenting with plastic some time before the interview with Tomajan, and had before then succeeded in permanently attaching the metal bowl to the plastic handle by compression under heat, he made no attempt to secure patent protection for that conception until shortly after appellee's device under the Williams patent went on the market. His cousin testified that appellant saw that device "around the middle of 1939." On June 12, 1939, he sought to reopen his patent application which had been filed January 11, 1938, shortly before the interview by which time he now claims he had been able to make complete disclosure to Tomajan, to cover the following claim: "A strainer comprising a substantially rigid frame of circular form, a handle integral with said frame and being substantially rigid, a channel within said circular frame below the upper face thereof, a mesh strainer having its upper edge within said channel, said upper edge being held securely between the walls of said channel solely by the gripping action of said walls."

It will be noted that, as in the case of his original application, he made no mention of materials or, more particularly, the use of plastic, in the construction of the device. This claim was rejected as "unpatentable over the art of record." September 12, 1939, he filed application for another patent, this time for a design for "a mounting for a reading glass or similar article." The drawing filed therewith is identical in appearance with the plastic handle used for the removable bowl strainer appearing as an exhibit in this record.

The trial court found that appellant's testimony that he had made complete disclosure of the details of the invention covered by the Williams patent was discredited by the inferences to be drawn from his failure to seek patent protection for that invention at a time when he was constantly in touch with his patent counsel and actually applied for two patents relating generally to the subject matter. We think this was a fair and obvious inference. The record shows that appellant was, as the court described him, "patent minded," being the holder of twenty-two patents as he stated himself. His testimony that he stopped working on the permanent bowl strainer because appellee discouraged him by the letter of February 10, 1938, does not seem credible, and does not preponderate against the positive evidence of appellee that there was no such disclosure as described by appellant in the interview of February 5.

The situation presented in this case of alleged misappropriation of an invention appears to us to be quite analogous to that presented in the Barbed Wire cases, Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co., 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154, where unpatented devices, the existence and use of which were proved only by oral testimony, were relied upon to anticipate a patent. The Court laid down the rule that proofs relating to such devices must be clear, satisfactory, and beyond a reasonable doubt to invalidate a patent for anticipation. The Court also observed that if the alleged inventor had regarded his alleged invention as of any value, he would have applied for a patent upon it since he did in fact obtain a patent for another device which appeared to have been a comparatively worthless contrivance, thus, of course, indicating his knowledge as to his rights under the patent laws. We think the same degree of proof beyond a reasonable doubt is required here where an alleged inventor has failed to avail himself of the machinery provided by the patent laws, with which he is entirely familiar, to protect his alleged invention, but instead, subsequently asked for relief outside the patent laws for alleged misappropriation of the invention. Appellant certainly did not sustain that burden of proof.

Appellant also asserts as error the action of the court in awarding appellee $1,073.13. "the fullest allowance of costs permissible under the statutes, rules and decisions applicable thereto." The clerk had taxed costs in the amount of $402.63, in accordance with the schedule usually followed by the courts, limiting the mileage for witness-

es to 100 miles and allowing two days travel and one for attendance for each of appellee's five witnesses. These witnesses had all come out from Massachusetts and had in fact all traveled 2200 miles or over, putting in two days each way. Appellant is a resident of New York and had originally filed his action there against appellee, Tomajan, and Williams. That suit was dismissed voluntarily after defendants, by motion, raised the question of jurisdiction and venue.

The court in its findings stated that it was convinced that the action was utterly groundless and that appellant must have been aware that bringing it in a United States District Court in Illinois instead of in Massachusetts where appellee had its principal place of business, where all the individuals involved resided, where the alleged cause of action arose, and where appellant himself could readily have proceeded, could serve only to harass the defendant and cause it unnecessary expense. The court therefore modified the clerk's statement of court costs by increasing the allowance for mileage to cover the full mileage travelled by each of the five witnesses, for full travel time of two days each way, and by charging against appellant the full amount for the court reporter instead of leaving the parties to their agreement each to pay half the costs of the reporter.

Appellant asserts that the court below should not have awarded appellee the costs taxed, although he does not, in his brief, state wherein the amounts allowed were in error or cite any authority to support his contention. We assume that his objection is to the allowance of mileage and time for travel over one hundred miles. In this we think the court was in error. R.S. § 876, 28 U.S.C.A. § 654, provides that subpoenas for witnesses will not run a greater distance than 100 miles, and it has been practically universally held that mileage to witnesses is taxable to the full extent of the distance they can be legally reached by subpoena, but not more than 100 miles. See Vincennes Steel Corp. v. Miller, 5 Cir., 94 F.2d 347; Kirby v. United States, 9 Cir., 273 F. 391 (a contract case), and cases there cited to the same effect from every

circuit except the first. We have found no authority to the contrary as to a civil case.

Judgment affirmed except as to the modification of the award of costs with respect to the mileage and travel allowances.