Howard **FARMER**, Plaintiff-Appellee,

v.

**ARABIAN AMERICAN OIL COMPANY**, Defendant-Appellant.

No. 240, Docket 27893.

United States Court of Appeals Second Circuit.

Argued Feb. 1, 1963.

Submitted to the in banc court March 18, 1963.

Decided Nov. 6, 1963.

Chester Bordeau, New York City (White & Case and William D. Conwell, New York City, on the brief), for defendant-appellant.

Kalman I. Nulman, New York City (William V. Homans, New York City, on the brief), for plaintiff-appellee.

Before LUMBARD, Chief Judge, and CLARK, WATERMAN, MOORE, FRIENDLY, SMITH, KAUFMAN, HAYS and MARSHALL, Circuit Judges.

LUMBARD, Chief Judge (with whom Judges MOORE, FRIENDLY, KAUFMAN and MARSHALL concur).

■ This appeal presents a question of importance in the administration of civil litigation, namely the power of a district judge to tax costs for the transportation of witnesses to trial from places without the judicial district and more than 100 miles distant from the place of trial. We hold that costs for such travel may be allowed and in the light of that holding we examine the rulings with respect thereto made by the district judges at the two trials of Farmer's suit for an alleged breach of his contract of employment.

Howard Farmer instituted this litigation on May 24, 1956, in the Supreme Court, New York County, against the Arabian American Oil Company (Aramco). Aramco removed the cause to the United States District Court for the Southern District of New York, there being diversity of citizenship. A trial was had before Judge Palmieri and a jury, which terminated in a jury disagreement. Thereafter, Aramco's motion for a directed verdict was granted, 176 F.Supp. 45 (1959), but this determination we reversed, 2 Cir., D.C., 277 F.2d 46, cert. denied, 364 U.S. 824, 81 S.Ct. 60, 5 L.Ed.2d 53 (1960), necessitating a second trial. Farmer failed to comply with an order directing him to post security for costs, and the action was dismissed. We again reversed, holding that the order constituted an abuse of discretion, as it effectively precluded the plaintiff from prosecuting his action because of the expense of procuring the bond, 2 Cir., 285 F.2d 720 (1960). A second jury trial, before Judge Weinfeld, resulted in a verdict for the defendant. The Clerk taxed costs of $11,900.12 which on Farmer's motion were reduced by Judge Weinfeld to $831.-60, and from this order Aramco appeals. After the appeal was heard by a panel consisting of Judges Lumbard, Smith and Hays, the active judges of this court agreed that the appeal should be considered *in banc*.

■ Some earlier decisions cast doubt on the appealability of a judgment solely for costs. See Newton v. Consolidated Gas Co., 265 U.S. 78, 44 S.Ct. 481, 68 L.Ed. 909 (1924); The James McWilliams, 49 F.2d 1026 (2 Cir. 1931); Walker v. Lee, 71 F.2d 622 (9 Cir. 1934). However, Rule 54(d) of the Federal Rules of Civil Procedure now governs the granting of costs. It states: "Except when an express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs * * *." The effect of this provision, combined with 28 U.S.C. § 1920,[1] is to make the right to statutory costs subject to judicial discretion. Within the careful statutory scheme, no hint of intent to create an element of uncontrolled discretion can be found, nor is one lightly to be implied. Furthermore, it is unquestionably true that the portion of the judgment relating to costs may be reviewed on appeal, for abuse of that discretion, if other issues are also raised. See, e. g., Chemical Bank & Trust Co. v. Prudence-Bonds Corp., 207 F.2d 67 (2 Cir. 1953), 347 U.S. 904, 74 S.Ct. 429, 98 L.Ed. 1063 (1954); Chicago Sugar Co. v. American Sugar Refining Co., 176 F.2d 1 (7 Cir. 1949), cert. denied, 338 U.S. 948, 70 S.Ct. 486, 94 L.Ed. 584 (1950). We see no reason why we should not hear an appeal from this element alone. It is surely a final judgment within the meaning of 28 U.S.C. § 1291. See Donovan v. Jeffcott, 147 F.2d 198 (9 Cir. 1945). We hold that when, as here, the question is not whether the district judge should have allowed or disallowed particular items of costs, but is rather whether he exceeded, and therefore abused, his discretion, a judgment

---

1. Section 1920 provides:
   "A judge or clerk of any court of the United States may tax as costs the following: * * *

   "(3) Fees and disbursements for printing and witnesses."

solely for costs is appealable. Lichter Foundation, Inc. v. Welch, 269 F.2d 142 (6 Cir. 1959); Kemart Corp. v. Printing Arts Research Laboratories, 232 F.2d 897 (9 Cir. 1956); Prudence-Bonds Corp. v. Prudence Realization Corp., 174 F.2d 288 (2 Cir. 1949); Harris v. Twentieth Century-Fox Film Corp., 139 F.2d 571 (2 Cir. 1943); 6 Moore, Federal Practice 1309 (1953).

██ In taxing costs, the Clerk included substantial amounts for air transportation of defendant's witnesses from as far away as Saudi Arabia to the place of trial. Judge Weinfeld reduced these assessments to a uniform allowance of $16.00 per witness, or the equivalent of 100 miles each way at $.08 per mile. Judge Weinfeld took this action as an exercise of judicial discretion, choosing not to rely upon the 100-mile limitation frequently imposed by the federal courts on their own power to assess transportation costs of witnesses brought from without the judicial district in which the trial court is sitting. We must therefore first determine the applicability of the 100-mile limitation. We hold the 100-mile rule inapplicable as a restraint upon the exercise of judicial discretion in the assessment of transportation costs for witnesses brought to trial.

The 100-mile rule appears to have evolved out of the limitation upon the subpoena power of a federal court to an area within the judicial district or 100 miles from the place of trial. See Federal Rules of Civil Procedure 45(e). There is not a shadow of a suggestion, however, in 28 U.S.C. § 1920(3), which provides simply that "[f]ees and disbursements for * * * witnesses" may be taxed as costs, that the court's power to issue a subpoena has anything whatever to do with what constitutes a recoverable disbursement for a witness. Indeed, 28 U.S.C. § 1821 as amended in 1949 provides clear authorization for the taxation of the actual expenses of travel for witnesses who come from afar. Section 1821 expressly provides that *in lieu of* the usual mileage allowance, actual travel expenses shall be allowed to witnesses who are required to travel between "the Territories and possessions, or to and from the continental United States." The great bulk of judicial authority supporting the 100-mile rule is to be found in cases decided prior to the enactment of the 1949 amendment which added the above-quoted provision. Friedman v. Washburn Co., 155 F.2d 959 (7 Cir. 1946); Vincennes Steel Corp. v. Miller, 94 F.2d 347 (5 Cir. 1938). The vast majority of the more recent cases which approve the rule do no more than cite other cases, without considering the reasons which might lend support to it or weigh against it. Those cases decided subsequent to the 1949 legislation give it little or no attention. E. g., Ludvigsen v. Commercial Stevedoring Co., Inc., 228 F.2d 707 (2 Cir.) (dictum), cert. denied, 350 U.S. 1014, 76 S.Ct. 660, 100 L.Ed. 874 (1956); Kemart Corp. v. Printing Arts Research Laboratories, Inc., 232 F.2d 897 (9 Cir. 1956); Perlman v. Feldmann, 116 F.Supp. 102 (D.Conn. 1953), reversed on other grounds, 219 F.2d 173, 50 A.L.R.2d 1134 (2 Cir.), cert. denied, 349 U.S. 952, 75 S.Ct. 880, 99 L.Ed. 1277 (1955). Moreover, in some recent cases in the lower courts, the 100-mile rule has been flatly rejected. Bennett Chemical Co. v. Atlantic Commodities, Ltd., 24 F.R.D. 200 (S.D.N.Y. 1959); Maresco v. Flota Mercante Grancolombiana, S.A., 167 F.Supp. 845 (E.D.N.Y.1958); Bank of America v. Loew's International Corp., 163 F. Supp. 924 (S.D.N.Y.1958).

Whatever the merits of the prior judicial rule, the Congress has not given any compelling evidence demonstrating an intention that it be continued. The reason for the addition of an express provision for actual travel expenses in the case of overseas travel is stated in the letter of the Assistant to the Attorney General, appended to and made part of the report of the Senate Committee discussing the 1949 bill: "For overseas travel, it is recommended that witnesses be allowed their actual expenses at the lowest first-class rate available. There have been times when witnesses have been required

to engage in such travel at a personal financial sacrifice." S. Rep. No. 187, 81st Cong. 1st Sess., reprinted in 1949 U.S.Code Cong.Serv. pp. 1231, 1233.

The 100-mile rule finds as little support in reason as it does in the statutes. Whether a witness comes into court voluntarily or under the compulsion of a subpoena, he comes at the behest of the party for whom he appears as a witness. Either way, he serves the interest of the court in arriving at a just determination of the controversy. See United States v. Sanborn, 28 F. 299 (C.C.D.Mass.1886) (opinion by Mr. Justice Gray). The fact that a subpoena does not issue because the witness is outside the reach of the court has nothing to do with the problem of how to allocate the cost of his appearance at the trial.

Nor can the 100-mile rule be defended as an allocation of the expenses of litigation in keeping with the practice of our courts to let such expenses fall on the party who incurs them. Fees for legal services are usually the largest single expense of litigation. In most cases, the prevailing party must pay such fees himself, even if he has come into court only to defend against an unjust accusation. There is no reason to extend this practice further. Certainly there is no reason to extend it by the curious means of limiting the recovery of travel expenses to 100 miles, a figure which may bear no relation to the distance actually traveled. As this case well illustrates, a 100-mile limitation is an anachronism in a day when the facility of world-wide travel and the development of international business make the attendance at trial of witnesses from far off places almost a matter of course.

It has been suggested that the 100-mile rule serves a salutary purpose insofar as it erects some protection for the impecunious litigant who might otherwise hesitate to institute litigation in the fear that, if unsuccessful, he may bear the burden of transporting the defendant's witnesses. It seems plain, however, that any such solicitude for the rule is ill-founded. There may be cases in which the fair administration of justice requires that the losing party not be taxed to the full extent of the cost of producing witnesses for the other party. But it surely cannot be said that there will never be a case in which the losing party, in the interest of justice, should bear such costs. For example, had the positions in this case been reversed and Farmer been forced to produce witnesses from Saudi Arabia in order to defend against unjust charges of Aramco, one could hardly assert the justice of requiring Farmer to pay the costs of producing his witnesses himself, or risk the failure of his defense. Indeed, adherence to a rigid limitation on the taxation of travel expenses is more likely to work to the detriment of litigants with meager financial resources than a rule which leaves the allocation of costs to be determined according to the circumstances of each case.

There is no reason why a judge should be thought less capable of determining a proper allocation of the costs of witnesses' travel expenses than he is of allocating other expenses of trial, such as transcripts, which are committed without artificial limitation to the discretion of the trial judge. We do not hold that the full measure of travel expenses *must* be taxed against the unsuccessful party in each and every cause; we merely affirm the *power* of a federal district judge to exercise his discretion in the allocation of such costs. In exercising that discretion, the trial judge may well take account of the relative financial resources of the parties and the ability of the unsuccessful litigant to bear the costs of the litigation, where the action has been prosecuted in all good faith. It is only under such a rule that the impecunious litigant may be assured of his right to present effectively his case to judge and jury.

Concluding that the 100-mile rule is inapplicable, we turn to the particular items of costs taxed in the case at bar. At the first trial, Judge Palmieri allowed travel expenses totalling $3,715.21 for transportation of six witnesses, three

**364**

of whom came from Saudi Arabia. For reasons stated below, we think that, except as to the travel expenses of witnesses Page and Swanson, totalling $2,064.00, it was within the discretion of Judge Palmieri to allow these expenses, and that his exercise of discretion should not have been disturbed. As the judge who presided at the first trial, Judge Palmieri had the greater opportunity to assess the necessity of particular costs incurred in defense of the action before him. This circumstance, considered in the light of the sensitive nature of the problems presented when one district judge is asked to pass upon the exercise of discretion by another, makes it inappropriate for a district judge to undertake an independent determination *de novo* of the costs allowed at a prior trial.

The plaintiff alleged that he had been hired to work as an ophthalmologist at the defendant's hospital in Saudi Arabia, and that he had been wrongfully discharged. In addition to disputing the terms of the employment contract, the defendant contended that the plaintiff had been discharged for just cause, specifically that he had performed an operation without first obtaining the results of certain tests, in violation of an express rule of the hospital and accepted standards of medical practice. The plaintiff's explanation for his discharge was that he had insisted upon truthfully reporting alleged findings that many American employees of the defendant in Saudi Arabia were contracting trachoma, a tropical disease which leads to blindness. He claimed that his superiors had sought to intimidate him into suppressing his findings.

The witnesses whose travel expenses are in dispute gave evidence relating to the conflicting accounts of the plaintiff's discharge. There is no question that these witnesses had information which was essential to disprove the plaintiff's claims and establish the defense. Judge Weinfeld determined, however, that in view of the heavy expense of producing them in court the defendant should have relied on written testimony taken in advance of trial or, at least, should itself bear the cost of the witnesses' appearance at trial. We cannot agree.

It is difficult to imagine a more serious charge against an employer than that he suppressed evidence that employees ran the risk of contracting a serious disease. In such circumstances, the defendant could not possibly have been expected to adopt less than the most effective means of disproving the plaintiff's charges. We have had occasion in the past to note the importance of "live" witnesses in a trial before a jury. See Arnstein v. Porter, 154 F.2d 464, 469–470 (1946). Moreover, in the first instance it is for the judge before whom the trial is had to gauge the necessity for transporting witnesses to the place of trial and to determine the propriety of assessing costs for such transportation against the unsuccessful litigant. We believe Judge Weinfeld should have deferred to Judge Palmieri with respect to those costs incurred in the first trial before him, just as we defer to him with respect to the costs of the trial at which he presided.

It appears, however, that two of the witnesses, Page and Swanson, occupied otherwise empty space in company planes on regularly scheduled flights to and from Saudi Arabia, so that as to them there was no actual travel expense incurred by the company and none should have been allowed.

Judge Palmieri allowed costs of $361.55 for transcripts of pretrial hearings, examinations before trial, and depositions. Judge Weinfeld reduced this amount to $76.05. Considering the importance of pretrial hearings and the discovery procedure under the Federal Rules, we cannot say that it was an abuse of discretion for Judge Palmieri to conclude that these costs were necessary elements of preparation for the first trial, and then to allow them. Similarly, we find it within Judge Palmieri's discretion to allow $1,812.30 for stenographer's fees incurred in compilation of the daily minutes of trial, as well as

$180.02 for photostatic copies of certain bulky exhibits, as he found both of these items necessary to the proper conduct of the trial. See 28 U.S.C. §§ 1920(2), 1920(4). We hold that it was an abuse of discretion in view of Judge Palmieri's findings as to their necessity, for Judge Weinfeld to disallow them.

We sustain in its entirety Judge Weinfeld's determination as to the costs incurred in the trial held before him. Although there are those of us who would have allowed traveling expenses beyond the 100-mile limit had the trial been before us, we cannot say that Judge Weinfeld abused his discretion in limiting costs for transportation of witnesses to the second trial, held before him, to a uniform allowance of $16.00 per witness.

We therefore reverse and remand with instructions to allow the costs as taxed by Judge Palmieri on the first trial, $6,601.-08, less $2,064.00 taxed for the travel of Page and Swanson, or a total of $4,537.08 for the first trial, plus those items taxed by Judge Weinfeld on the second trial.

SMITH, Circuit Judge (with whom CLARK and HAYS, Circuit Judges, join) dissenting.

I dissent, both from the determination that Judge Weinfeld abused his discretion in fixing costs and from the holding that he had discretion to tax costs for travel over the "100-mile limit." As a matter of judgment the judge taxing costs might have made larger allowances for photostats and transcript on both trials, because of the seriousness of the charges and the importance of the outcome to the parties. But the issues were not extraordinarily complicated nor the trial one of great length, the judge had the benefit of observation of the proceedings directly before him, and I would not hold the judge's decision, that much of the expense was not really necessary, error or his limitation of costs so flagrant an error as to constitute an abuse of discretion.

More important, however, to future litigants is the rejection of the limitation almost universally observed in the federal courts heretofore, of the taxation of travel expenses as costs where the travel is from a point without the district and more than 100 miles distant. This decision not only breaks with the overwhelming weight of authority, and creates a different rule for costs in civil cases from that in admiralty, but also, as the majority indeed appears to admit, abandons the traditional scheme of costs in American courts to turn in the direction of the English practice of making the unsuccessful litigant pay his opponent's litigation expense as well as his own. It has not been accident that the American litigant must bear his own cost of counsel and other trial expense save for minimal court costs, but a deliberate choice to ensure that access to the courts be not effectively denied those of moderate means. Of course there are arguments for the English system, in its discouragement of much litigation, but it is strange to find this court taking this time and opportunity to espouse it in the face of the contrary choice of the Supreme Court when the identical question of taxation of travel expense was before it in the formulation of the Admiralty Rules. I fear that the majority reads into the statute and rule concerning reimbursement of witnesses and costs a direction as to where the ultimate burden of litigation expense must fall which just isn't there.

In reducing the allowance to the equivalent of mileage for 100 miles each way at 8¢ a mile, Judge Weinfeld did not rely on the limitation referred to which has heretofore been imposed by the courts on the power to assess mileage outside the district and more than 100 miles, but rather took the action as an exercise of discretion. We should consider, however, whether his ruling should be affirmed on the basis of the 100-mile limitation. I would hold that it should be so affirmed. Even though it is now accepted that a witness need not be under subpoena to collect his statutory fees and make the losing party liable for them as costs, it will be noted that most courts that have

considered the question have imported the territorial limitation on the subpoena of witnesses [2] (within the district or 100 miles from the place of trial) to limit the distance for which mileage fees can be taxed as costs. Ludvigsen v. Commercial Stevedoring Co., Inc., 228 F.2d 707 (2 Cir.) (dictum), cert. denied 350 U.S. 1014, 76 S.Ct. 660, 100 L.Ed. 874 (1956); Kemart Corp. v. Printing Arts Research Laboratories, Inc., 232 F.2d 897 (9 Cir. 1956); Spiritwood Grain Co. v. Northern Pac. Ry., 179 F.2d 338 (8 Cir. 1950) (dictum); Friedman v. Washburn Co., 155 F.2d 959 (7 Cir. 1946); Vincennes Steel Corp. v. Miller, 94 F.2d 347 (5 Cir. 1948); Perlman v. Feldmann, 116 F. Supp. 102 (D.Conn.1953), reversed on other grounds, 219 F.2d 173, 50 A.L.R.2d 1134 (2 Cir.), cert. denied 349 U.S. 952, 75 S.Ct. 880, 99 L.Ed. 1277 (1955); Kenyon v. Automatic Instrument Co., 10 F.R.D. 248 (W.D.Mich.1950); Brookside Theatre Corp. v. Twentieth Century-Fox Film Corp., 11 F.R.D. 259 (W.D.Mo. 1951), modified on another ground, 194 F.2d 846 (8 Cir.), cert. denied 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348 (1952); Barnhart v. Jones, 9 F.R.D. 423 (S.D. W.Va.1949); Gallagher v. Union Pac. R. Co., 7 F.R.D. 208 (S.D.N.Y.1947); Anonymous, 1 Fed.Cas. 992 (C.C.S.D. N.Y.1863); Beckwith v. Easton, 3 Fed. Cas. 29 (D.C.E.D.N.Y.1870); The Leo, 15 Fed.Cas. 326 (D.C.E.D.N.Y.1872); Buffalo Ins. Co. v. Providence & Stonington S.S. Co., 29 F. 237 (C.C.S.D.N.Y. 1886); The Vernon, 36 F. 113 (D.C.E. D.Mich.1888); The Syracuse, 36 F. 830 (C.C.S.D.N.Y.1888); Kirby v. United States, 273 F. 391 (9 Cir.1921), aff'd. 260 U.S. 423, 43 S.Ct. 144, 67 L.Ed. 329. (The affirmance does not mention the problem); Consolidated Fisheries Co. v. Fairbanks, Morse & Co., 106 F.Supp. 714 (E.D.Pa.1952); Lee v. Pennsylvania R. Co., 93 F.Supp. 309 (E.D.Pa.1952); Commerce Oil Refining Co. v. Miner, 198 F.Supp. 895 (D.R.I.1961); Reynolds Metals Co. v. Yturbide, 258 F.2d 321 (9 Cir. 1958), cert. denied 358 U.S. 840, 79 S.Ct. 66, 3 L.Ed.2d 76. Besides this authority, Moore approves the rule, although without discussion or analysis. 6 Moore, Federal Practice, pp. 1362–63. Contra, Bennett Chemical Co. v. Atlantic Commodities, Ltd., 24 F.R.D. 200 (S.D. N.Y.1959); Maresco v. Flota Mercante Grancolombiana, S.A., 167 F.Supp. 845 (E.D.N.Y.1958); Bank of America v. Loew's International Corp., 163 F.Supp. 924 (S.D.N.Y.1958); Knox v. Anderson, 163 F.Supp. 822 (D.Hawaii 1958). Besides United States v. Sanborn, 28 F. 299 (C.C.D.Mass.1886) (Gray, J.) which rejects the 100 mile rule, there is other authority to the same effect from Massachusetts. See Prouty v. Draper, 20 Fed.Cas. 13 (C.C.D.Mass.1842) (Story, J.). The First Circuit, however, cannot really be taken as having this position today. The Governor Ames, 187 F. 40, 50 (1 Cir. 1910) states the rule which had been followed in the District of Massachusetts but criticizes it. The District Court in Commerce Oil Co. v. Miner, supra, felt itself not bound by the old cases and went on to follow the great weight of authority.[3]

2. Rule 45(e) of the Federal Rules of Civil Procedure.

"(e) Subpoena for a Hearing or Trial.

"(1) At the request of any party subpoenas for attendance at a hearing or trial shall be issued by the clerk of the district court for the district in which the hearing or trial is held. A subpoena requiring the attendance of a witness at a hearing or trial may be served at any place within the district, or at any place without the district that is within 100 miles of the place of the hearing or trial specified in the subpoena; and, when a statute of the United States provides therefor, the court upon proper application and cause shown may authorize the service of a subpoena at any other place.

"(2) A subpoena directed to a witness in a foreign country shall issue under the circumstances and in the manner and be served as provided in Title 28, U.S.C., § 1783."

3. From opinion by Judge Day, 198 F.Supp. 895, 899:

"In the absence of any authoritative holding by the Court of Appeals for the First Circuit, I am constrained to follow the reasoning and logic of the rule pre-

The sole remaining support for the rejection of the 100-mile limitation, therefore, would seem to be the District Court cases in the Southern and Eastern Districts of New York, and the single case from the District of Hawaii. With all deference, I feel that the rejection of the rule advocated by these few cases and carried out by our brethren in this case is based on an erroneous reading of the proviso added in 1949 to 28 U.S.C. § 1821. The legislative history of the proviso, 1949 U.S.Code Cong.Service, pp. 1231–1233, discloses only a concern for the inadequacy of compensation to witnesses, as to rate per diem and mileage, and inadequacy in cases where mileage was below first class fare, with no discussion whatever by the Committee or the Assistant to the Attorney General of the eventual recovery of the fees as costs by the prevailing party. It was necessary to obtain authority to pay the expenses of such witnesses at the lowest first class rate so that their attendance could be obtained without financial sacrifice on their part. It is noteworthy that the request came from the Department of Justice and not from the Administrative Office, and that it applies to witnesses in criminal as well as civil and admiralty causes. It is impossible to tell from the language of the statute itself whether the 100-mile rule was within the contemplation of the Congress at the time. Yet some indication of a lack of any purpose to affect the rule may be drawn from the title of the Act which added the proviso, "An Act [T]o increase the fees of witnesses in the United States courts and before United States commissioners, and for other purposes" with no mention of any effect on taxable costs. It is hard to believe that the Assistant to the Attorney General was unfamiliar with the 100-mile rule in the light of the volume of government civil and admiralty litigation. This is particularly so in the light of the existence of Admiralty Rule 47,[4] by which the Supreme Court, as early as 1920, recognized and enforced the 100-mile rule. The Supreme Court's power over costs in admiralty was confirmed in the 1948 revision of Title 28, § 1925, without any reference to Rule 47. It seems quite anomalous to argue that the Congress which in 1948 confirmed the power of the Supreme Court over costs in admiralty in the face of existing Rule 47 applying the 100-mile travel costs limit, indirectly rejected it a year later by a statute not limited to civil cases.

In the interest of precise statement, I would adopt the formulation of the Ninth Circuit: "[M]ileage allowable should be that which was traveled *within* the district, *or* actual mileage traveled in and out of the district up to 100 miles, whichever is the greater." Kemart Corp. v. Printing Arts Research Laboratories, Inc., supra, 232 F.2d at 904 (emphasis in original). The point is of more than formal interest in a circuit whose districts include some with distances of more than 100 miles from a seat of court. See Hayden v. Chalfant Press, Inc., 281 F.2d 543 (9 Cir. 1960).

Imposition of this limitation on costs is more in keeping with a fundamental choice in our legal system than allowing an unlimited reimbursement would be. Unlike some other countries we have always left the major portion of the expense of litigation to fall ultimately upon the party who bears it in the first in-

vailing in the majority of the federal courts. This rule imposes no undue hardships on a litigant, in view of the liberal provisions of Rule 26 of the Federal Rules of Civil Procedure for the taking of the depositions of persons living outside the district where a case is pending, and for their use at the trial of such case. In the event a litigant feels that the testimony of a witness in person is essential, it is only right and proper that such litigant should bear the excess in cost incident to his personal appearance before the trial court. Accordingly, the allowance for mileage for witnesses residing outside this district shall be limited to 100 miles each way."

4. "Admiralty Rule 47. Costs—travel of witnesses

"Traveling expenses of any witness for more than one hundred miles to and from the court or place of taking the testimony shall not be taxed as costs."

stance. Recovery of attorney's fees and major expenses of preparation for trial is with us the exception rather than the rule. If, perhaps, the victor in a just cause is not made entirely whole, the doors of our courts are not closed to the small litigant who cannot risk being ruined by the imposition of his adversary's full expenses. The witness, of course, still recovers his full statutory fees under 28 U.S.C. § 1821. The effect of the existing rule is to divide this burden between the party summoning him and the party liable for the statutory costs, with the party who chooses to summon him bearing the larger portion of the costs when extensive travel is chosen in place of testimony by deposition or letters rogatory. I submit that this result will best promote the fair administration of justice in the district courts.[5]

Judge Weinfeld was therefore correct in result in limiting the travel expense allowed as costs to each witness from without the district to $16.00—8¢ a mile for 100 miles each way for each trial.

Turning now to his rulings on other items we must determine whether there was an abuse of discretion in his disallowance of any of those taxed by the Clerk. At the outset we are faced with the fact that the judgment after the jury disagreement on the first trial was vacated by the reversal on appeal, so that Judge Palmieri's findings as to the necessity and reasonableness of such items as transcript and photostatic copies of portions of exhibits for use at the trial were not binding on Judge Weinfeld in review-

ing costs at the time of final judgment. These are matters in which, however, it would seem that great deference should be given by the second judge to the opportunity of the first judge, here Judge Palmieri, to weigh the situation then before him in assessing necessity. The second judge does, however, have an advantage of the additional developments before him subsequent to the first trial, which he may take into consideration. In the light of this, although the writer would as an original matter have been inclined to make the allowance made by Judge Palmieri, at least as to the necessity of photostats[6] and transcripts of pretrial depositions and perhaps also as to the necessity of daily transcript,[7] there is surely ground for difference of opinion as to the necessity of photostats and transcript, let alone daily copy, in a trial of these rather simple, though hard fought, issues. It was therefore not an abuse of discretion to disallow the items, and as pointed out by the majority, our review of these items is not to determine whether the findings of Judge Weinfeld as to necessity and reasonableness are correct, but whether they are so grossly in error as to constitute an abuse of judicial discretion.

I would affirm the judgment for costs of $831.60.

CLARK, Circuit Judge (concurring in the dissent of Judge SMITH).

I concur completely in Judge Smith's dissent, expressing, as it does, a wise public policy, buttressed by the overwhelming weight of authority and by long settled federal practice. But I ven-

5. Judge Moore's language in Barnhart v. Jones, supra, is often quoted:

" * * * The *effect* of a subpoena served outside the district is limited to 100 miles from the place of trial, and it seems only reasonable to infer that Congress must have intended to limit the taxation of mileage to the same distance. If a court in a country as vast as ours permitted taxation of the entire mileage of witnesses without limitation as to distance, an unbearable burden would be imposed upon the conduct of litigation. Such a course might in some cases lead to a result whereby costs would be greater

than the amount of the recovery.

"Economy in litigation is an essential element of justice. Taxation of unlimited mileage allowances is in derogation of this principle, and cannot be permitted."

6. Compare Galion Iron Works & Mfg. Co. v. Beckwith Machinery Co., 25 F.Supp. 591 (W.D.Pa.1938) with Raffold Process Corp. v. Castanea Paper Co., 25 F.Supp. 593 (W.D.Pa.1938).

7. See Bank of America v. Loew's International Corp., supra; Perlman v. Feldmann, supra.

ture a brief additional statement because of the great practical importance of the issue and because the ambiguities and policy conflicts of the majority opinion will require a re-evaluation of the problem either judicially or by rule-makers or legislators. The problem may be made concrete by considering the difficulties hereafter facing district court clerks and judges. Up to now—as shown by inquiry, as well as by the long list of precedents—the clerks have applied the 100-mile limitation on travel of witnesses routinely and substantially without dispute. Now they are faced with two opposing policy approaches and will not be able to act when the issue arises without a full-dress hearing and a court review.

In its attempt to straddle the division of policy disclosed below, the majority decision has all the earmarks of a compromise result. There is nothing inherently wrong in this; at times a compromise among views may be quite desirable. But care must be taken that it does not lead to illogical or conflicting results. Here in practical consequence we have lavish travel fees allowed on the round of litigation which the defendant lost, and denied on the round it won. The difficulty arises because the decision departs from the wise normal rule that one judge alone is responsible for the ultimate decision of a cause on trial and that this responsibility is not to be shared with or apportioned among those who have made preliminary or interlocutory rulings. As a matter of fact the decision does great injustice to the first judge here, because it holds him to rulings made at a preliminary stage, before much that is relevant had happened, and does not give him an opportunity to review and revise his actions in the light of later events. I regard the responsibility as centered in Judge Weinfeld;

but if, contrary to this, we force him to divide it with Judge Palmieri, we should at least have given the latter the opportunity to review his holdings in the light of the full record.

Again it appears that the majority have lacked final courage to reach a completely hard-boiled result, as of course is shown by their reduction of the quite outrageous sum claimed of $11,900.12 (composed mainly of the cost of defendant's bringing its own employees around the world) to $4,537.08, plus the cost allowed of the second trial, apparently $335.55. This sum, totaling nearly $5,-000, is not an inconsiderable item; but ironically that required some questionable rulings to reach it. Thus the expenses of witnesses Page and Swanson, totaling $2,064, were disallowed because they occupied otherwise unused space on a company plane. Except on the theory that two wrongs make a right, this cannot be justified, for it is settled on the authorities that costs for witnesses legally due are taxable, whether they have been paid to the witness or not. The taxing authority cannot be expected to go into the issue whether the witness may not have appeared voluntarily, making no claim for fees.

There are other factors which, to me, point also to the injustice of the result. At an early stage of the case, we very pointedly criticized lavish travel expenditures in reversing an order for a bond for costs which plaintiff was unable to furnish. Farmer v. Arabian American Oil Co., 2 Cir., 285 F.2d 720. When the defendant persisted, it would seem that the extra expenditures should have been at its own risk and from its own treasury. The majority are surely ill-advised in trying to claim support from the supposed equities; at best shifting sands, here these obviously favor the plaintiff as much as the defendant.[1] Nor is the

1. Thus the defendant's defense of its discharge of the plaintiff was an attack on the latter's professional competence, calling forth as bitter emotions as did the plaintiff's attack on defendant's hospital conditions. And there seems to have been a great deal of evidence not closely relevant involving plaintiff's marital, litigious, and emotional instability. It should be recalled that it took two juries to settle the plaintiff's fate; the first jury disagreed.

supposed need of oral testimony an adequate excuse; the jury, in my judgment, is not so stupid as to need to see the defendant's employees in person to decide where the truth lies. And in the federal system we have provided ample means of securing testimony through depositions and interrogatories, making it reasonable, natural, and practical to limit repayment of travel costs to those only who can be required to come to court by exercise of the court's subpoena power. Indeed, heretofore we have taken the position that a party's preference for oral testimony must be weighed against the burden to his opponent, and an order for depositions or interrogatories must be substituted when travel costs will be burdensome. Hyam v. American Export Lines, 2 Cir., 213 F.2d 221, 222–223 (per Harlan, J.); Richmond v. Brooks, 2 Cir., 227 F.2d 490, 492. Nor is the claim at all realistic that these large allowances may at times favor the impecunious litigant. Such a litigant will not have the cash to advance originally; nor can he take the chance of being saddled with the cost ultimately. As Judge Smith so well demonstrates, this argument represents an approach to the English system, never

accepted by us because of our conviction that it "favored the wealthy and unduly penalized the losing party." [2] Here the bill of costs, obviously ruinous to a plaintiff who could not afford a cost bond, can mean little more than an instrument of revenge to this great corporation. I submit that it is not wise policy, or consistent with our traditions, to put the decision of the lavishness of the trial for all practical purposes in the hands of the winning litigant.

Judge Smith gives a fair indication of the strength of the precedents for this traditional view, including the Supreme Court's Admiralty Rule 47, although he does not exhaust the available number.[3] With the recent cases repudiating the few earlier cases contra in the First Circuit, see Commerce Oil Refining Corp. v. Miner, D.C.R.I., 198 F.Supp. 895, the majority decision is supported only by certain district court decisions here which do not represent the law of our Circuit.[4] And neither statute nor rule defines of what these court costs shall consist.[5] As Judge Smith demonstrates, the decision represents an erroneous reading of the 1949 proviso to 28 U.S.C. § 1821 and its legislative history.[6] The

---

2. Conte v. Flota Mercante del Estado, 2 Cir., 277 F.2d 664, 672, per Friendly, J., citing Goodhart, Costs, 38 Yale L.J. 849, 872–877 (1929).

3. See, e. g., Annotation 4 to 28 U.S.C. § 1821.

4. Bank of America v. Loew's International Corp., D.C.S.D.N.Y., 163 F.Supp. 924, per Dawson, J.; Bennett Chemical Co. v. Atlantic Commodities, Ltd., D.C.S.D.N.Y., 24 F.R.D. 200, per Dawson, J.; Maresco v. Flota Mercante Grancolombiana, S.A., D.C.E.D.N.Y., 167 F.Supp. 845, per Byers, J. The case of Knox v. Anderson, D.C.Hawaii, 163 F.Supp. 822, rests on a special statutory provision. See note 6 infra. Against these may be cited such important Second Circuit cases as Perlman v. Feldmann, D.C.Conn., 116 F.Supp. 102, 115, per Hincks, J.; Gallagher v. Union Pac. R. Co., D.C.S.D.N.Y., 7 F.R.D. 208, per Caffey, J.; Ryan v. Arabian Am. Oil Co., D.C.S.D.N.Y., 18 F.R.D. 206, 208, per Bondy, J.; and other earlier cases cited by Judge Smith.

5. Thus F.R. 54(d) does not define costs, but leaves their fixing to statute or decisional law. And 28 U.S.C. § 1920 defines certain costs such as the fees of the clerk and marshal, but is pointedly unspecific in its subd. (3) covering "Fees and disbursements for printing and witnesses."

6. This proviso, 63 Stat. 65, to the standard mileage allowance statute, 28 U.S.C. § 1821, allowing actual travel expenses to witnesses "attending in any court of the United States * * * who are required to travel between the Territories and possessions, or to and from the continental United States," was obviously passed with no intent to change the long standing federal practice, as Judge Smith demonstrates. Moreover, its wording does not bear the burden attempted to be put upon it, for by its terms it covers travel only between the place of trial and the places listed in the statute which do not include foreign countries. And the comment from the Assistant to the Attorney General adds nothing; the reference to "overseas travel" is to travel to or from

result reached below, D.C.S.D.N.Y., 31 F.R.D. 191, 197, of $831.60—a not insubstantial sum in itself—is thus based upon strong precedent and long continued, substantially unbroken custom. It is fair and just. It should have been sustained here.

WATERMAN, Circuit Judge (in separate statement).

I dissent from the result reached by the majority of the court and agree with my brothers Clark, Smith and Hays that the judgment for costs of $831.60 should be affirmed.

I hold a somewhat different view from my colleagues and therefore submit this separate statement. It is my belief that Judge Weinfeld properly treated the motion before him as a motion addressed to his discretion and that he properly exercised his discretion in his disposition of that motion. I differ from the position taken in the opinions of the dissenters relative to the power Judge Weinfeld could exercise over the major items of dispute between the parties—the items relating to the proper taxation of transportation expenses of certain of the prevailing party's witnesses who were not subpoenaed. See Judge Weinfeld's discussion at 31 F.R.D. 191, 195–196.

When a motion to review the taxation of witness costs is presented to a district judge he surely should have in mind the rule my three dissenting brothers would inflexibly apply—the rule that recoverable witness mileage should be limited as of course to travel within the district, or, in the event of travel outside the district, to 100 miles of the place of hearing. Nevertheless, such a motion is a proper one to make, and the only purpose of the motion is to have the judge's independent judgment exercised. It is obvious that Judge Weinfeld did have this long-standing rule in mind when he so properly held that the costs movant requested should not be allowed.

the Territories and possessions. The only case on the proviso, Knox v. Anderson, D.C.Hawaii, 163 F.Supp. 822, involving travel between California and

I would lay down a rule that, in the taxation of costs "as of course to the prevailing party" by the clerks of our district courts, the so-called "one hundred mile rule" must be followed in the first instance, but I would not take away from a district judge the power to modify that taxation if motion be made to the judge so to do. There is always the rare case —which neither Judge Weinfeld nor I would find this case to be—where taxation inflexibility can work scandalous injustice.

Hawaii (i. e., within its exact terms) expressed some reluctance to construing it as without the usual federal rule.